WILLIAM C. EVANS, PLAINTIFF-RESPONDENT, v. FARMERS' RELIANCE INSURANCE COMPANY, OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued November 1, 1932—Decided January 31, 1933.

For the appellant, *James Mercer Davis.*

For the respondent, *Robert J. Tait Paul.*

The opinion of the court was delivered by

TRENCHARD, J. This is a suit upon two fire insurance policies issued by the defendant company to the plaintiff and covering personal property destroyed by fire. The trial judge, at the Camden Circuit, directed a verdict for the plaintiff, and the defendant appeals from the consequent judgment.

The defendant-appellant contends that the trial judge erred in directing a verdict for the plaintiff because, as it argues, "the plaintiff's right of action had not matured" in that he did not fulfill the conditions precedent to bringing his action.

The conditions of each policy said not to have been fulfilled were, briefly: (1) notice of loss by fire; (2) proof of loss, and (3) arbitration in the event of disagreement as to the amount of loss.

In view of the evidence, and for reasons now to be stated, we think that those conditions of the policies did not prevent the direction of a verdict for the plaintiff.

As to the notice of loss by fire: The fire occurred on August 24th, 1929. The adjusters of the defendant company were at the scene of the fire on August 25th, 1929; the assistant secretary of the defendant and another adjuster for the defendant were there on September 20th, 1929, and at that time

went over the fire loss and cause a paper to be signed by the plaintiff which recites the particular fire and the date thereof.

As to proof of loss: When the adjusters were at the scene of the fire on September 20th, 1929 (according to the testimony of the assistant secretary of the defendant), they and the plaintiff "went over the items that were lost and I took his estimate of what he thought they were worth."

As to arbitration: The policies called for arbitration only if there was "disagreement as to the amount of loss." There was no dispute as to the amount of loss, and in fact the amount of loss was stipulated; the only dispute was as to the question of liability.

Now some time after the meeting between the plaintiff and the adjusters on September 20th, 1929, the plaintiff called at the office of the defendant company and asked why the loss had not been paid, and was told by the secretary of the company that they would not pay and that if he wanted the money he would have to sue for it. That this statement was made was an uncontradicted and undisputed fact in the case. Later, and within the time permitted by the terms of the policy, this suit was instituted.

We think that the unqualified and unexplained and undisputed statement made by the insurer to the insured, after informal notice of the fire and proof of loss, that "the insurer would not pay and that if the insured wanted the money he would have to sue for it," was a waiver of the covenant to arbitrate "in the event of disagreement as to the amount of loss," where, in fact, as here, there was no dispute as to amount of loss, and was also a waiver of further proof of notice of the fire and proof of loss. *Cheshansky* v. *Merchants' Fire Insurance Co.*, 102 *N. J. L.* 415; *Radwanski* v. *Scottish Union, &c., Co.*, 100 *Id.* 192; *State Insurance Co.* v. *Maackens*, 38 *Id.* 564.

Thus, in *Cheshansky* v. *Merchants' Fire Insurance Co., supra,* it was said: "The statement by Hibbard (agent) that she (insured) should go to a lawyer and bring suit was a clear refusal to pay, and constituted a waiver of the appraisal covenant and further proofs of loss. It informed the assured that do what she might, her claims would not be recognized."

Again, in *Radwanski* v. *Scottish Union &c., Co., supra,* it was said: "Even if it be considered that the proof of loss did not comply with the provision of the policy, the motion to nonsuit for this particular reason was properly refused. The defendant had denied any liability under the policy, and there was no proof that the denial was based upon the failure of the plaintiff to comply with this particular provision." And in that case it was further said: "The last ground upon which the motion to nonsuit was rested, was that the plaintiff was barred of his right of action because of his failure to comply with a demand made upon him by the defendant for an appraisal of the value of the goods and chattels damaged by the fire, the contention being that the policy required compliance with such a demand when made by the insurer. But this is not the fact. The policy only provides for an appraisal 'in the event of disagreement as to the amount of loss' and there is nothing in the proofs to suggest that there was any dispute between the parties over this matter."

Again in *State Insurance Co.* v. *Maackens, supra,* it was said: "A denial of all liability on the policy, and peremptory refusal to pay under any circumstances, is also a waiver of the right of such company to have the stipulated time before any suit is commenced. Upon such denial of liability, and refusal to pay, an action may be commenced at once."

It is, therefore, apparent from the undisputed evidence that the defendant waived the conditions precedent to the bringing of the suit.

Lastly it is contended that the court erred in directing a verdict for the plaintiff because, as the defendant argues, the policies were voided by a change in interest, title or possession, in view of the condition of the policies making them void "if any change, other than by death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupant without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise."

It seems that there were executions on judgments in the hands of the sheriff, and also a tax warrant in the hands of

the tax collector; but it seems to be questionable that any
levy was made on the property covered by the insurance.
However, the solution of that question in our opinion is not
important for present purposes. The important and undis-
puted and controlling fact is that, whatever levies were made,
the person or persons making them *did not disturb* the plain-
tiff in his possession, and it is likewise an undisputed fact
that the possession of the plaintiff was not changed nor even
disturbed *at any time by any person or persons;* and, indeed
the plaintiff denied any knowledge of the levies, if any. No
further steps were ever taken under any of the levies and
there were no sales advertised or made of any of the goods
so levied upon. Indubitably the possession of the plaintiff
up to the time of the fire was undisturbed.

Now, a levy on personal property, under an execution on
a judgment or under a tax warrant, where the insured retains
the actual possession of the property and such possession is
not disturbed, does not vitiate a policy of fire insurance pro-
viding that it will be void in case of a change "in the interest,
title or possession of the subject of the insurance."

The authorities uniformly so hold. See 3 *Cooley's Briefs
on Insurance* (*2d ed.*) 2702, where, after quoting the rule that
the issuance of an execution on real estate does not cause such
a change in title or interest as would void the policy, the
learned author adds: "The rule stated also applies to levies
of executions on personal property. The constructive posses-
sion of the sheriff by virtue of the levy of an execution on
goods insured, where the insured retains the actual possession,
does not vitiate a policy providing that it will be void in case
of alienation, change in title, or termination of the interest
of the insured." Citing numerous cases. See, also, 4 *Joyce
on Insurance* 2278, where it is said: "So the constructive
possession of the insured goods by the sheriff under an execu-
tion is not such a change of possession as avoids the policy."

The case of *Hare* v. *Headley,* 54 *N. J. Eq.* 545, where the
Court of Chancery decided that *"seizures and levies under the
writ of attachments"* violated the conditions of the policy,
without citing any authorities or making other comment, we

think is not in point. It is enough to say that it will be seen that the court was there dealing with the effect of *seizure* and levy on property under attachments, and that section 9 of the Attachment act declares that "the personal property so attached shall remain in the safe keeping of the officer to answer and abide the judgment of the court," &c. 1 *Comp. Stat., p.* 138. It would seem to follow that there the possession was consequently disturbed. Not so in the case at bar.

Of course it is plain that an execution and levy presents a means through which a change might be wrought in the title, interest or possession of the insured by taking possession of the goods to the exclusion of the owner or through a sale, but neither of such steps were taken in this case. And we believe that our courts have uniformly held that mere legal process and levy with the *potential power* to take actual possession of the goods to the exclusion of the owner or to make sale, does not void the terms of a condition such as exists in this policy.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 12.

*For reversal*—None.