619 A.2d 664

EDWARD DUERLEIN AND ALICE DUERLEIN, PLAINTIFFS–RESPONDENTS, v. NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION (SELECTIVE INSURANCE COMPANY OF AMERICA, SERVICING CARRIER), DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 26, 1992—Decided February 1, 1993.

Before Judges PETRELLA, LONG and D'ANNUNZIO.

*John M. Bashwiner* argued the cause for appellant (*Bashwiner & Woods*, attorneys).

*Stanley F. Friedman* argued the cause for respondent.

The opinion of the court was delivered by

LONG, J.A.D.

On February 16, 1988, Edward Duerlein was injured in an automobile accident. The accident was caused by a tire from Charles Onyegbule's car (driven by Fabian Kelechi Ekean Van Wu) which came loose, jumped the divider and struck Duerlein's windshield. At the time of the accident, Duerlein and his wife, Alice, were insured by the Selective Insurance Company, as Servicing Carrier of the New Jersey Automobile Full Insurance Underwriting Association. Onyegbule was not insured. The Selective policy issued to the Duerleins provided $35,000 in uninsured motorist coverage. Selective was given notice of the accident and of Onyegbule's lack of insurance.

As a result of the injuries and property damage the Duerleins sustained, they filed suit against Onyegbule and Van Wu. On January 11, 1990, the Duerleins made a formal demand for arbitration under the Selective policy which contains a standard arbitration clause. The Duerleins designated Barry Siegel, Esq. as their member of the arbitration panel. On April 4, 1990, Selective chose Edward Cillick, Esq. According to the terms of the policy, the third arbitration panel member was to be selected and agreed upon by the two party-selected members.

Meanwhile, on June 29, 1990, default was entered against Ongyebule and Van Wu in the law suit for failure to answer. The Duerleins' attorney informed Selective of the default by letter dated August 17, 1990 and inquired as to whether Selective "would like to take over the handling of the Superior Court litigation" in light of the uninsured motorist benefits provision

of the policy. Selective chose not to become a party to the lawsuit.

A proof hearing was scheduled for January 2, 1991. Selective had been given notice of the proof hearing by counsel for the Duerleins, but chose not to participate. After hearing the proofs, Judge Mandak determined that the Duerleins' damages (including prejudgment interest) amounted to $34,078.21 plus $120.50 for costs of suit. Judgment in that amount was entered against Onyegbule and Van Wu on January 11, 1991. Selective was given notice of the judgment.

In the interim, on January 2, 1991, the third arbitrator, Steven Lichon, was finally agreed upon. During the period in which the parties were struggling over the naming of the third arbitrator, the Duerleins declined to answer Selective's arbitration interrogatories. On November 2, 1990, the answers were provided.

With the selection of the panel completed, arbitration was scheduled for March 8, 1991. That arbitration was canceled due to the illness of Selective's arbitrator. The matter was rescheduled for April 17, 1991. On the second scheduled date, the Duerleins travelled from their home in Pennsylvania to attend the arbitration, only to find it had been canceled because Selective had not been notified that the matter was scheduled and was not ready to proceed.

Frustrated by the delay in arbitration, on July 21, 1991, the Duerleins filed a new complaint accompanied by an order to show cause seeking to compel Selective to arbitrate or, in the alternative, seeking summary judgment in the amount determined at the proof hearing in the suit against Onyegbule and Van Wu. In August, 1991, counsel for Selective wrote to the Duerleins' counsel suggesting that the arbitration take place in late September or early October. In its papers opposing the Duerleins' complaint, Selective indicated its desire to arbitrate because it "disputes that the insured is entitled to recover benefits from the subject contract of insurance because he has

failed to prove that his injuries were caused as a result of the negligence of an uninsured operator." Furthermore, Selective disagreed with the quantum of damages claimed by Mr. Duerlein.

At oral argument, counsel for the Duerleins argued that, although the parties had mutually agreed on an arbitration date of October 9, 1991, the trial judge should enter judgment against Selective in the amount already fixed at the proof hearing in the default case on the theory that the insurance company "stands in the shoes of the uninsured motorist." Counsel for Selective emphasized the need for arbitration, positing that the insurer's obligation under the policy is "to pay what the arbitrators say the case is worth." Selective also claimed that it did not take part in the proof hearing because of a possible conflict of interest and because it was not obligated to do so under the contract.

On October 9, 1991, the trial judge granted summary judgment in favor of the Duerleins in the amount of $34,078.21, plus costs. Although he acknowledged Selective's contractual right to arbitrate the Duerleins' claim, the judge ruled that Selective had waived that right due to its bad faith in giving the Duerleins the "run around" and engaging in "undue delay and unjustified avoidance of its responsibilities under its contract and pursuant to law." Selective filed a notice of appeal and a motion for stay which was granted by a trial judge pending appeal.

The question presented is whether the trial judge was correct in determining that Selective waived its right to arbitrate based upon its bad faith dealings with the Duerleins. We think not. Thus, we reverse.

I

The Uninsured Motorist Coverage provided by Selective to the Duerleins contained a standard insurance arbitration clause:

If we [the insurer] and a covered person do not agree: (1) [w]hether that person is legally entitled to recover damages under this part [entitled Uninsured Motorists Coverage]; or (2) [a]s to the amount of damages; either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.... A decision agreed to by two of the arbitrators will be binding as to: (1) [w]hether the covered person is legally entitled to recover damages; and (2) [t]he amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damage agreed to by the arbitrators will be binding.

No challenge to the validity of this clause has been advanced here and, in fact, this language has been held valid and enforceable.[1] *Cohen v. Allstate Ins. Co.*, 231 *N.J.Super.* 97, 100, 555 *A.*2d 21 (App.Div.), *certif. denied,* 117 *N.J.* 87, 563 *A.*2d 846 (1989) (upholding identical arbitration clause).

■ The scope of arbitration and the duties of each party are dependent upon the agreement of the parties, who have a "right to stand upon the precise terms of their contract; the courts may not rewrite the contract to broaden the scope of

---

[1] The institution and maintenance of arbitration proceedings is governed by *N.J.S.A.* 2A:24–1 to 24–11. *N.J.S.A.* 2A:24–1 provides:

A provision in a written contract to settle by arbitration a controversy that may arise therefrom or a refusal to perform the whole or a part thereof or a written agreement to submit, pursuant to section 2A:24–2 of this title, any existing controversy to arbitration, whether the controversy arise out of contract or otherwise, shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract.

*N.J.S.A.* 2A:24–3 (Supp.1992) sets forth the remedy for failure to perform a contractual promise to arbitrate.

Where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, the superior court may in a summary action direct that the arbitration proceed in the manner provided for in the agreement. The party alleged to be in default may demand a jury trial as to the issue that there has been no agreement in writing for an arbitration or that there has been no failure to comply therewith.

arbitration or otherwise make it more effective." *Cohen, supra*, 231 *N.J.Super.* at 101, 555 *A.*2d 21; *Moreira Constr. Co. v. Wayne Tp.*, 98 *N.J.Super.* 570, 576, 238 *A.*2d 185 (App.Div.), *certif. denied*, 51 *N.J.* 467, 242 *A.*2d 15 (1968).

 However, despite the existence of an arbitration contract, a party may, by expressed or implied acts or omissions, waive the right to arbitrate. John Alan Appleman, 8D *Insurance Law and Practice* § 5116, at 68 (1981). The insurer may, for example, waive its right to arbitrate by "its failure to request arbitration, or to make a timely demand." *Id.* at 69–70. *See also* Patrick D. Kelly, *Blashfield Automobile Law and Practice* § 332.2 (1987); Annotation, *Uninsured Motorist Indorsement: Validity and Enforcement of Provision for Binding Arbitration and Waiver Thereof*, 24 *A.L.R.*3d 1325, §§ 6(a) and 6(b) (1969 & Supp.1992). Likewise, if an insurer engages in deliberate delay or inaction or other efforts to frustrate the insured's attempts to arbitrate, it may be found to have acted in bad faith and to have impliedly waived its entitlement to arbitration. Appleman, *Insurance Law and Practice* § 5116, at 71. *See also Evans v. Farmers' Reliance Ins. Co.*, 110 *N.J.L.* 159, 164 *A.* 258 (E. & A.1933) (statement by insurer that it "would not pay [for the insured's loss] and that if the insured wanted the money he would have to sue for it" constituted waiver of fire insurance policy's arbitration provision); *Poray v. Royal Globe Ins. Co.*, 90 *N.J.Super.* 454, 217 *A.*2d 916 (Law Div.1966) (where the insurer failed to exercise the right to arbitrate after being placed on notice that the insured was bypassing arbitration and where the insurer failed to assert a position as to arbitration prior to the time the insured obtained a judgment against the uninsured motorist, it was held to have waived its right to demand arbitration); *Niazi v. St. Paul Mercury Ins. Co.*, 265 *Minn.* 222, 121 *N.W.*2d 349 (1963) (insurer's failure to act in good faith acts as waiver if insured is demonstrably prejudiced); *Karasch v. Empire Mut. Ins. Co.*, 13 *Misc.*2d 395, 175 *N.Y.S.*2d 690 (N.Y.Sup.Ct.1958) (waiver due to insurer's failure to appoint representative for 24 days);

*Bielski v. Wolverine Ins. Co.,* 2 *Mich.App.* 501, 140 *N.W.*2d 772 (1966), *aff'd,* 379 *Mich.* 280, 150 *N.W.*2d 788 (1967) (whether insurer unreasonably delayed arbitration proceedings is question of fact that must be answered before ruling on waiver as a matter of law). *But see Riley v. State Farm Mut. Auto. Ins. Co.,* 420 *F.*2d 1372 (6th Cir.), *cert. denied,* 399 *U.S.* 928, 90 *S.Ct.* 2245, 26 *L.Ed.*2d 795 (1970) (When insured made no demand for arbitration, no waiver by insurance company where insurer failed to intervene in case against defaulting uninsured and refused, based on claim of no legal liability, to pay policy benefits).

■ Once waiver of an arbitration clause is found, judicial remedies will be available. *La Stella v. Garcia Estates, Inc.,* 128 *N.J.Super.* 173, 176, 319 *A.*2d 274 (App.Div.1974), *rev'd on other grounds,* 66 *N.J.* 297, 331 *A.*2d 1 (1975). *See also* 6A *Corbin on Contracts* § 1443, at 436 (1962) (If insurer repudiates or waives right to arbitrate, the insured may "bring [an] action in reliance on the repudiation, or otherwise change ... position in reliance. Thereafter, the repudiator has no power of retention and cannot insist on the remedy by arbitration.")

## II

Here, the trial judge granted summary judgment in favor of the Duerleins based upon a finding of bad faith on the part of Selective. In order to grant summary judgment, there must be no genuine issue of material fact requiring plenary determination and the trial judge must "must accept as true all recorded facts and reasonable inferences therefrom in the light most favorable to the [party opposing the motion]." *Hyland v. Township of Long Beach,* 160 *N.J.Super.* 201, 205, 389 *A.*2d 494 (App.Div.1978) (citing *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 74, 110 *A.*2d 24 (1954)), *certif. denied,* 78 *N.J.* 395, 396 *A.*2d 582 (1978). *See also Ocean Cape Hotel Corp. v. Masefield Corp.,* 63 *N.J.Super.* 369, 379, 164 *A.*2d 607 (App.Div.1960).

■ The certifications before the trial judge demonstrate that the Duerleins waited almost two years after the accident (from February, 1988 until January, 1990) to demand arbitration; that they appointed an arbitrator at that time; that Selective appointed its arbitrator in April, 1990; that for the next nine months the third arbitrator was not agreed upon; that in January 1991, the third arbitrator was finally appointed; that the first arbitration date was canceled because of the illness of Selective's arbitrator; that the second date was canceled because of an administrative error by Selective; that the Duerleins' new complaint, in fact, demanded arbitration, and that the parties had set an arbitration date of October 9, 1991 before this case came on for oral argument.

While we agree that no genuine issue of material fact is presented here, it is equally clear to us that, if the trial judge had applied the proper standard and viewed the facts in a light most favorable to Selective, he could not have summarily concluded that Selective was guilty of bad faith. Indeed, the facts presented would likely have warranted summary judgment in favor of Selective had such a motion been made. What is critical here is that the Duerleins participated fully in the delay in this case. They neglected to ask for arbitration for two years after the accident. They also failed to invoke the contract remedy provided to deal with delay in the appointment of the arbitrator. According to the arbitration clause, they had a right, within 30 days of the selection of Selective's arbitrator, to seek a court order appointing the third arbitrator. This could have been done in May of 1990. *See also N.J.S.A.* 2A:24–5 (Supp.1992). Instead, the Duerleins continued on without acting until January, 1991 when the third arbitrator was finally agreed upon.

To be sure, the two aggravating cancellations were entirely Selective's responsibility. However, neither the illness of the arbitrator nor the administrative error which caused the cancellations evidences the intent or motive to do wrong which is pivotal to a finding of bad faith. *New Amsterdam Casualty*

*Co. v. National Newark & Essex Banking Co.*, 117 *N.J.Eq.* 264, 277, 175 *A.* 609 (Ch.1934), *aff'd,* 119 *N.J.Eq.* 540, 182 *A.* 824 (E. & A.1936).

In sum, while Selective's behavior in this case may not have been a model, when coupled with the Duerleins' own lassitude, it fell far short of the kind of wrongful action which we think is necessary to warrant depriving a party of the arbitration remedy it bargained for.

Thus, we reverse the entry of summary judgment on count two of the Duerleins' complaint and direct the entry of judgment in favor of the Duerleins on the first count of their complaint which demanded arbitration. The arbitration should be completed within 90 days. Jurisdiction is not retained.