RICHARD E. WILLIAMS, PLAINTIFF, v. NATIONAL CAR RENTAL SYSTEM, INC., AND THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided March 31, 1988.

*Dalwyn Dean* for plaintiff (*Freeman & Bass,* attorneys).

*Francis X. Dee* for defendants (*Carpenter, Bennett & Morrissey,* attorneys; *Rosemary S. Gousman* on the brief).

VILLANUEVA, J.S.C.

This is an action for malicious prosecution, breach of contract, wrongful interference with economic relationships and wrongful discharge against National Car Rental System, Inc. ("National") and for false arrest and false imprisonment against The Port Authority of New York and New Jersey ("Port Authority").

The issue involved is whether the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.* ("the act"), applies to the Port Authority.

The court holds that while the Port Authority, arguably, could come within the Tort Claim Act's definition of a "Public entity," the act does not apply to the Port Authority, a bi-state agency that derives its powers, including the power to sue and be sued, from joint legislative action approved by the Congress of the United States.

Immediately prior to trial, the Port Authority moved to dismiss plaintiff's complaint against it. This opinion supplements the court's oral opinion which granted the motion.

Plaintiff's complaint was filed with the Clerk of the Superior Court on November 14, 1985. His notice of claim, dated November 12, 1985, was received by the Port Authority on November 19, 1985.

Plaintiff urges that the Tort Claims Act does not apply to the Port Authority. The Port Authority avers that the act does apply.

Initially, our courts were confronted with a question as to whether the act was intended to apply to bi-state authorities empowered to sue and be sued. *See, e.g., Yancoskie v. Delaware River Port Authority*, 155 *N.J.Super.* 1 (App.Div.1977), aff'd on other grounds 78 *N.J.* 321 (1978). The issue ultimately was resolved by our Supreme Court in *Bell v. Bell*, 83 *N.J.* 417 (1980), holding that, since the Delaware River Port Authority had been established as a bi-state agency with the approval of Congress and with the power to sue and be sued, the "sue and be sued" clause should be construed following the broad federal interpretation as constituting a waiver of immunity which cannot be modified unilaterally by the Tort Claims Act.[1]

As defined by the act, " 'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." *N.J.S.A.* 59:1-3.

The act further declares:

"State" shall mean the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued. "State" also means the Palisades Interstate Park Commission, but only with respect to employees, property and activities within the State of New Jersey. [*Ibid.*]

The Port Authority contends that it is an entirely different type of agency from the Delaware River Port Authority, because it was created in a different manner. The court finds this argument irrelevant and without merit. Even though the Delaware River Port Authority resulted from joint legislative action approved by the Congress of the United States, both it

---

[1]The act was amended in 1980 to specifically include one interstate entity, the Palisades Interstate Park Commission, by including it within the definition of State. *Margolis & Novack, Tort Claims against Public Entities* (1986 ed.), Comment to *N.J.S.A.* 59:1-3 at 14.

and the Port Authority were granted power "to sue and be sued." *Bell v. Bell, supra,* 83 *N.J.* at 423; *N.J.S.A.* 32:1–157.

Until 1951, the Port of New York Authority [2], "as an arm and agency of the states," enjoyed sovereign immunity from suit. See cases collected at *Port of N.Y. Authority v. Weehawken Tp.,* 27 *N.J.Super.* 328, 333 (Ch.Div.1953), rev'd on other grounds 14 *N.J.* 570 (1954). *Port Authority of N.Y. and N.J. v. Bosco,* 193 *N.J.Super.* 696, 700 (App.Div.1984). *N.J.S.A.* 32:1–157. *L.*1951, *c.* 204 at 740. *See also* N.Y. §§ 7101–7112 (McKinney 19—).

The Tort Claims Act is a comprehensive legislative enactment governing the immunity of the State and public entities in the State. The basic approach of the act is to reestablish sovereign immunity against tort claims except where there is a statutory declaration of liability. *See Malloy v. State,* 76 *N.J.* 515, 518–519 (1978).

*Miller v. The Port of New York Authority,* 18 *N.J.Misc.* 601, 15 *A.*2d 262 (Sup.Ct.1939), described the Port Authority's function:

> The history of the creation of the Authority with a statement of the several legislative enactments in furtherance of the objects thereof, and of the powers conferred by these enactments and by the compact of April 30th, 1921, between New York and New Jersey, will be found in *Gerhardt v. Helvering* [*Helvering v. Gerhardt* ], 304 *U.S.* 405 [58 *S.Ct.* 969, 82 *L.Ed.* 1427 (1938) ], from which it appears that the Authority is a bi-state corporation, created by compact between the two states, which directed the Authority to recommend a comprehensive plan for improving the port of New York and facilitating its use, by the construction and operation of bridges, tunnels, terminals and other facilities. * * * [*Id.,* 18 *N.J.Misc.* at 604, 15 *A.*2d at 265]

---

[2]The original name of the bi-state agency created by the compact of April 30, 1921 between the states of New York and New Jersey was The Port of New York Authority. *N.J.S.A.* 32:1–4.

On July 1, 1972 the name of the agency was changed to The Port Authority of New York and New Jersey. *L.*1972, *c.* 69, § 1. New York passed legislation having an identical effect with this New Jersey public law, by *L.*1972, *c.* 531, approved May 24, 1972.

Thus, it was held that the Port Authority is a "direct state agency, exercising a governmental function." *Id.*, 18 *N.J.Misc.* at 606, 15 *A.*2d at 266.

■ The broad powers conferred upon the Port Authority leave no doubt that it is a public authority or public agency. Even so, it is clear that the Tort Claims Act does not apply to the Port Authority, a bi-state agency that derives its powers, including the power to sue and be sued, from joint legislative action approved by the Congress of the United States. It is axiomatic that the New Jersey Legislature cannot unilaterally modify the waiver of sovereign immunity prescribed by the bi-state compact; yet that would be the result were the Tort Claims Act held to apply to the Port Authority. *N.J.S.A.* 59:8–1 *et seq.* imposes more stringent notice of claim requirements than *N.J.S.A.* 32:1–163. The act's restrictive approach demonstrates its inapplicability to tort claims against a bi-state agency, such as the Port Authority.

To hold that the Port Authority is subject to the Tort Claims Act would result in the imposition of substantial limitations on the right to bring a tort claim against it—a right that has long existed by virtue of the bi-state compact. Excepting the Palisades Interstate Park Commission, the act does not apply to tort claims against interstate entities. *See Bell v. Bell, supra,* 83 *N.J.* at 422.

The Port Authority is not a covered entity within the intendment of the act so that none of its provisions apply to the Port Authority. Accordingly, plaintiff's action is maintainable only under the "sue and be sued" provision of the compact, not the Tort Claims Act.

■ The Port Authority urges that even if the Tort Claims Act does not apply to it, plaintiff's claim is barred by his failure to follow the jurisdictional prerequisites to suit set forth in *N.J.S.A.* 32:1–163:

The foregoing consent [to sue the Port Authority] is granted upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall

be commenced within one year after the cause of action therefor shall have accrued, and upon the further condition that in the case of any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the Port Authority by or on behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced....

Plaintiff's failure to file a notice of claim with the Port Authority prior to the filing of the lawsuit bars this action.[3]

*N.J.S.A.* 32:1–163 explicitly requires that suits against the Port Authority shall be commenced within one year after the date the cause of action accrues *and* that a notice of claim shall be served upon the Port Authority at least sixty days *before* any such suit is commenced. In other words, the notice of claim must be filed within ten (10) months of the date the cause of action accrues. *Atlantic Aviation Corp. v. Port of New York Authority,* 66 *N.J.Super.* 15, 17 (Law Div.1961).

In *Atlantic Aviation Corp.,* Judge Colie held that claimant's correspondence with the Port Authority, which began within two months of the accident, concerning claims against it, substantially complied with the statutory requirement that a notice of claim be timely filed before suit, although it did not comply with the statutory requirement as to verification or service. He reasoned that the purpose of the notice provision had been satisfied, *i.e.,* knowledge of a claim and reasonable opportunity to investigate. In addition, he indicated that, since the Port Authority voluntarily elected to treat plaintiff's correspondence as a "claim," it could not be allowed to retract its course of action to the prejudice of plaintiff. *Id.* at 21.

Our courts have strictly construed these requirements as jurisdictional prerequisites which are conditions precedent to the bringing of suit. *Matthews v. Port of New York Authority,* 163 *N.J.Super.* 83, 85 (Law Div.1978), aff'd o.b. 171 *N.J.Super.* 38 (App.Div.1979); *Wood v. DIC/Underhill & Universal*

[3]Parenthetically, the court notes that plaintiff's complaint would also be barred under the Tort Claims Act for failure to file a claim within ninety days after accrual of the cause of action. *N.J.S.A.* 59:8–8(a).

*Builders Supply Co.,* 136 *N.J.Super.* 249, 252 (Law Div.1975), aff'd 144 *N.J.Super.* 364 (App.Div.1976), certif. den. 73 *N.J.* 65 (1977). See also *Schillinger v. United States,* 155 *U.S.* 163, 15 *S.Ct.* 85, 39 *L.Ed.*2d 108 (1894) in which the United States Supreme Court succinctly stated:

> The United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the government is submitted to the courts for judicial determination. Beyond the letter of such consent, the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the government. [*Id.* at 166, 15 *S.Ct.* at 86]

The rule in *Schillinger* was specifically applied to the Port Authority in the case of *Rao v. Port of New York Authority,* 122 *F.Supp.* 595 (E.D.N.Y.1954), aff'd 222 *F.*2d 362 (2 Cir.1955).

*N.J.S.A.* 32:1–163 plainly requires a plaintiff to file a notice of claim sixty days prior to instituting suit against the Port Authority so that it has adequate time to investigate the claim, reasonable opportunity for the preparation of its defense, and reasonable opportunity to effect a settlement before the institution of suit. *Zamel v. Port of New York Authority,* 56 *N.J.* 1, 7 (1970). In *Zamel,* the Court found that plaintiff's attorney's timely letter to the Port Authority notifying it of the claim was substantial compliance with the act, as it complied with all of the statutory requirements of a notice of claim, except that it was not verified by plaintiff.

In the present case, plaintiff's cause of action against the Port Authority accrued on December 7, 1984. Plaintiff's notice of claim, dated November 12, 1985, was received by the Port Authority on November 19, 1985. Thus, the Port Authority was deprived of any opportunity to investigate the claim, prepare a defense or effect a settlement before the institution of suit on November 14, 1985.

Therefore, since plaintiff's notice of claim was served upon the Port Authority *after* this lawsuit was commenced, he has failed to comply with the jurisdictional prerequisites set forth in *N.J.S.A.* 32:1–163. Accordingly, the present case differs from

*Zamel* and *Atlantic Aviation Corp.*, as no notice of claim was given to the Port Authority *before* suit was instituted.

In general, total compliance with statutory notice requirements is not necessary; substantial compliance will suffice. *Vedutis v. Tesi,* 135 *N.J.Super.* 337 (Law Div.1975), aff'd *sub nom. Vedutis v. So. Plainfield Bd. of Ed.,* 142 *N.J.Super.* 492 (App.Div.1976). Substantial compliance, however, is based on the notion that substantially all of the required information has been given to those to whom notice should be given and that it has been given in a form which should alert the recipient of the fact that a claim is being asserted against the sovereign and the nature and extent thereof. Stated differently, substantial compliance means that notice has been given in a way which, though technically deficient, substantially satisfies the purpose for which a notice of claim is required. Substantial compliance cannot be predicated upon no compliance. *Navarro v. Rodriguez,* 202 *N.J.Super.* 520, 530 (Law Div.1984).

The Port Authority's motion to dismiss the complaint is granted.