Reversed and remanded for a new trial consistent with this opinion.

---

661 A.2d 312

DONALD BROWN AND JOSEPH SMITH, PLAINTIFFS–RESPON-DENTS–CROSS–APPELLANTS, AND EDWARD McKEON, JOHN NOONAN, WILLIAM HOITELA, LOUIS IORIO, ROGER PRIOR, CHARLES RICKERT, JOSEPH HAUGK, JOHN P. GAW AND JOHN DOES I–III, PLAINTIFFS, v. THE PORT AUTHORITY POLICE SUPERIOR OFFICERS ASSOCIATION, DEFENDANT–CROSS–RESPONDENT, AND THE PORT AUTHORITY OF NEW

YORK AND NEW JERSEY, DEFENDANT–APPELLANT–
CROSS–RESPONDENT, AND CHARLES PAPETTI, JOSEPH
MORRIS, LOUIS ECHEVARRIA, JR., KEVIN HASSETT, INDI-
VIDUALLY, AND AS OFFICERS OF THE PORT AUTHORITY
POLICE SUPERIOR OFFICERS ASSOCIATION, DEFEN-
DANTS.

Superior Court of New Jersey
Appellate Division

Argued May 10, 1995—Decided July 7, 1995.

124

Before Judges SKILLMAN, WALLACE and KLEINER.

*Michael D. Driscoll* argued the cause for appellant-cross-respondent Port Authority of New York and New Jersey (*Hugh H. Welsh,* attorney; *Mr. Driscoll,* on the brief).

*Brian J. McCarthy* argued the cause for respondents-cross-appellants Donald Brown, et al. (*George B. Wolfe,* attorney).

*Carl Rachlin* argued the cause for cross-respondent Port Authority Police Superior Officers Association (*Edmond Pendleton,* attorney).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Plaintiffs Donald Brown and Joseph Smith [1] are retired former employees of defendant Port Authority of New York and New Jersey. (Port Authority) and members of the defendant Port Authority Police Superiors Officers Association (Association), which is the exclusive union representative for bargaining unit members including Brown and Smith. After plaintiffs retired, the Port Authority and the Association entered into a new collective bargaining agreement (Agreement) on April 13, 1988, covering the period between July 28, 1985 and July 22, 1989.

On April 12, 1989, one day less than a year after the execution of the Agreement, plaintiffs filed this lawsuit alleging that the Port Authority breached its collective bargaining agreements with the Association by failing to follow the grievance procedures contained therein and "wrongfully" failing to provide plaintiffs with medical

---

[1] The other plaintiffs voluntarily withdrew their claims.

insurance coverage.[2]  Plaintiffs' complaint also alleged that the Association breached its duty of fair representation by arbitrarily ignoring or processing in a perfunctory manner meritorious grievances and failing to protect plaintiffs' rights to medical insurance coverage.  The complaint further alleged that the Port Authority and the Association engaged in "collusion."  Plaintiffs named not only the Port Authority and the Association but also various officers of the Association as defendants.  Discovery disclosed that plaintiffs' rather nebulous claims were based primarily on defendants' negotiation and execution of the April 13, 1988 Agreement. The relief plaintiffs sought was limited to compensatory and punitive damages.

The trial court granted the Port Authority's motion to dismiss the complaint on the ground that plaintiffs had failed to comply with *N.J.S.A.* 32:1–163, which requires a party seeking money damages against the Port Authority to file a notice of claim at least sixty days before filing suit and, after satisfying this prerequisite, to file suit within one year of accrual of the cause of action. The court concluded that plaintiffs' cause of action accrued on April 13, 1988, when the new collective bargaining agreement was executed, and that plaintiffs failed to serve any form of notice of claim upon the Port Authority before filing this suit one year later. The court also granted the Association's motion to dismiss insofar as plaintiff's complaint related to medical insurance coverage on the theory that because plaintiffs were precluded from proceeding against the Port Authority, "all claims arising out of [the Port Authority and Association] negotiations for new benefits must be dismissed."  However, the court indicated that it would preserve for determination at trial plaintiffs' claim that the Association had failed to process plaintiffs' grievances in good faith.  The court

---

[2] We note that plaintiffs' statement of facts violates *Rule* 2:6–2(a)(4) by failing to cite "references to the appendix and transcript."  We further note that plaintiffs make various allegations regarding the underlying facts and the procedural history of this controversy for which we are unable to find support in the record.

also dismissed plaintiffs' claims against the individual defendants and their punitive damages claims against the Association.

The Port Authority subsequently filed a motion to supplement the court's order granting summary judgment to specifically set forth that any and all claims for indemnification and/or contribution were dismissed with prejudice. After reviewing this motion, the trial court decided *sua sponte* to reconsider the prior summary judgment in favor of the Port Authority as well as the partial summary judgment in favor of the Association. The court issued a letter opinion on January 5, 1994, which stated that upon reconsideration it construed "*N.J.S.A.* 32:1–163 as not applicable to actions arising from a labor contract dispute." The court also stated that "[f]ederal law is controlling and preempts state law in matters involving labor disputes." However, the court concluded that plaintiffs' complaint should remain dismissed, not because plaintiffs had failed to comply with the notice of claim provisions of *N.J.S.A.* 32:1–163 but because plaintiffs' claims are "subject to [the] collective bargaining agreement between the Port Authority and the union" and "[p]laintiffs are required to exhaust grievance procedures or remedies provided in the collective bargaining agreement." The trial court further concluded, without consideration of the provisions of the collective bargaining agreement governing the processing of employee grievances, that "[p]laintiffs should have an opportunity to have their employment contract grievance resolved." The court memorialized this decision by an order entered on January 5, 1994, which dismissed plaintiffs' complaint against the Port Authority and the Association "with prejudice, upon the condition that the matter is returned to binding arbitration."

The Port Authority appeals from the part of this order that requires it to participate in arbitration and seeks the entry of an order dismissing all claims against the Port Authority with prejudice and without conditions. Plaintiffs appeal from the part of the January 5, 1994 order that dismisses with prejudice the part of

their complaint relating to "their failure to receive increased medical insurance benefits."

We conclude that the trial court erred in holding that plaintiffs' claims are governed by federal labor law. We further conclude that plaintiffs failed to comply with the provisions of *N.J.S.A.* 32:1–163 governing suits for money damages against the Port Authority and consequently its action against the Port Authority must be dismissed. In addition, the trial court erred in ordering the Port Authority and the Association to participate in an arbitration dealing with the part of plaintiffs' complaint relating to the processing of their grievances.

I

[1] Section 2(2) of the National Labor Relations Act (NLRA), 29 *U.S.C.A.* 152, provides in pertinent part:

The term "employer" .. shall not include the United States or any wholly owned Government corporation, . . or any State or political subdivision thereof. ..

In *NLRB v. Natural Gas Util. Dist.*, 402 *U.S.* 600, 602–03, 91 *S.Ct.* 1746, 1748, 29 *L.Ed.*2d 206, 209 (1971), the Court held that "[f]ederal, rather than state, law governs the determination, under § 2(2), whether an entity created under state law is a 'political subdivision' of the State and therefore not an 'employer' subject to the Act." The Court stated that "Congress enacted the § 2(2) exemption to except from Board cognizance the labor relations of federal, state and municipal governments, since governmental employees did not usually enjoy the right to strike." *Id.* at 604, 91 *S.Ct.* at 1749, 29 *L.Ed.*2d at 209. The Court noted that the National Labor Relations Board (NLRB) had ruled that this exemption applies to "entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Id.* at 604–05, 91 *S.Ct.* at 1749, 29 *L.Ed.*2d at 210. The Court concluded that under the second NLRB test, a utility district created by petition of a group of local property owners constituted

a "political subdivision" because the district was created by court order, its commissioners were appointed by a judge, its records were public, its property, revenue and bonds were tax exempt, and it possessed the power of eminent domain. *Id.* at 605–09, 91 *S.Ct.* at 1750–51, 29 *L.Ed.*2d at 208–12.

We are satisfied that the Port Authority satisfied the first NLRB test applied by the Court in *Natural Gas Util. Dist.*, that is, it was "created directly by the [compact] state[s], so as to constitute ... [an] administrative arm[ ] of the government[s]." *Id.* at 604, 91 *S.Ct.* at 1749, 29 *L.Ed.*2d at 210. The Port Authority was created by a bi-state compact enacted into law by the legislatures of New York and New Jersey and approved by Congress. *Hess v. Port Auth. Trans–Hudson Corp.*, —— *U.S.* ——, ——, 115 *S.Ct.* 394, 398, 130 *L.Ed.*2d 245, 252 (1994). The Port Authority is administered by twelve commissioners, six of whom are appointed by each of the compact states. *N.J.S.A.* 32:1–5. The Port Authority's commissioners from New Jersey are appointed by the Governor, with the consent of the Senate. *N.J.S.A.* 32:2–3. Any proposed Port Authority action is subject to veto by the governors of the compact states. *N.J.S.A.* 32:1–17. The Port Authority has general authority "to purchase, construct, lease and/or operate any terminal or transportation facility" within the Port Authority District. *N.J.S.A.* 32:1–7. In the exercise of these powers, the Port Authority operates three major airports, a bus terminal, numerous bridges, tunnels, marine facilities, the World Trade Center, and a subway which passes under the Hudson River. See *N.J.S.A.* 32:1–35.1; *N.J.S.A.* 32:2–23.1 to 23.5; *N.J.S.A.* 32:1–28; *N.J.S.A.* 32:1–119; *N.J.S.A.* 32:2–36; *N.J.S.A.* 32:1–35.28 to 35.36(b); *N.J.S.A.* 32:1–35.50 to 35.68; *N.J.S.A.* 32:1–148. It also has the power of eminent domain, *N.J.S.A.* 32:1–35.22, the income from its bonds and other obligations is exempt from state and local taxation, *N.J.S.A.* 32:1–33, and its property is exempt from state and local taxation, see *Port of N.Y. Auth. v. City of Newark*, 20 *N.J.* 386, 120 *A.*2d 18 (1956).

In view of the control that the governors and legislatures of the compact states exercise over the Port Authority's operations and the extensive governmental responsibilities it performs, the Port Authority has been described as "a state agency performing functions on behalf of the state," *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 819 *F*.2d 413, 415 (3rd Cir.), *cert. denied*, 484 *U.S.* 953, 108 *S.Ct.* 344, 98 *L.Ed.*2d 370 (1987). Indeed, the Port Authority has been expressly held to be a "political subdivision" within the intent of the part of the Internal Revenue Code which exempts the interest from such an entity's bonds from income taxation. *Commissioner of Internal Revenue v. Shamberg's Estate*, 144 *F*.2d 998, 999–1000 (2nd Cir.1944), *cert. denied*, 323 *U.S.* 792, 65 *S.Ct.* 433, 89 *L.Ed.* 631 (1945). Therefore, the Port Authority's status as a "political subdivision" is even clearer than that of the local utility district involved in *Natural Gas Util. Dist.*

This conclusion is supported by decisions of the lower federal courts that have held that governmental agencies similar to the Port Authority are "political subdivisions" exempt from federal labor law. *See, e.g., Crilly v. Southeastern Pa. Transp. Auth.*, 529 *F*.2d 1355 (3d Cir.1976); *Moir v. Greater Cleveland Regional Transit Auth.*, 895 *F*.2d 266 (6th Cir.1990); *Division 1287, Amalgamated Transit Union v. Kansas City Area Transp. Auth.*, 485 *F.Supp.* 856 (W.D.Mo.1980). In *Crilly*, the court held that SEP-TA, an agency of Pennsylvania that operates mass transportation in the Philadelphia metropolitan area, is a "political subdivision" that is excluded from the definition of "employer" under § 2(2) of the NLRA. The court stated that because "SEPTA was created by an act of the state legislature as an 'agency and instrumentality' of the Commonwealth to 'exercise ... public powers' including that of eminent domain," and is composed of members appointed by the Governor of Pennsylvania, Mayor of Philadelphia and various county commissioners, it "falls squarely within the meaning of public subdivision as that term is used in § 2(2)." *Id.* at 1358. Similarly, in *Division 1287, Amalgamated Transit Union*, the court held that a bi-state agency established by compact

between Missouri and Kansas and approved by Congress was a "political subdivision" and therefore was not an "employer" within the meaning of § 2(2).

■ Furthermore, the NLRB has taken the position for at least the last twenty years that the Port Authority is not an "employer" subject to the provisions of the NLRA. This interpretation of the NLRA by the agency responsible for its administration is entitled to "great respect." *NLRB v. Natural Gas Util. Dist., supra,* 402 *U.S.* at 605, 91 *S.Ct.* at 1749, 29 *L.Ed.*2d at 210; *accord NLRB v. United Food & Commercial Workers Union, Local 23,* 484 *U.S.* 112, 123, 108 *S.Ct.* 413, 421, 98 *L.Ed.*2d 429, 442 (1987).

Plaintiffs argue that the Supreme Court's recent decision in *Hess v. Port Auth. Trans–Hudson Corp., supra,* holding that the Port Authority Trans–Hudson Corporation (PATH), a subsidiary of the Port Authority, is not entitled to immunity from suit in federal court under the Eleventh Amendment, requires us to reconsider the expansive interpretation that the NLRB and the courts have extended to the term "political subdivision" under § 2(2) of the NLRA. However, the Court's opinion in *Hess* was narrowly focussed upon the history and language of the Eleventh Amendment. The Court noted that the historical "impetus" for adoption of the Eleventh Amendment, had been "the prevention of federal court judgments that must be paid out of a State's treasury," *id.* at ——, 115 *S.Ct.* at 404, 130 *L.Ed.*2d at 260, a concern which would not be implicated by a suit against PATH because any judgment would be payable solely out of PATH funds. *Id.* at ——, 115 *S.Ct.* at 405, 130 *L.Ed.*2d at 261. The Court also relied on the terms of the Eleventh Amendment, which prohibit suit in federal court "against one of the United States" by a non-citizen of that State, noting that "Compact Clause entities owe their existence to state and federal sovereigns acting cooperatively, and not to any 'one of the United States.'" *Id.* at ——, 115 *S.Ct.* at 401, 130 *L.Ed.*2d at 256.

This analysis of the scope of Eleventh Amendment immunity from suit in the federal courts clearly has no bearing upon the

interpretation of the exclusion of public entities from the provisions of federal labor law enacted by Congress in 1935. Therefore, we conclude that the Port Authority is a "political subdivision" that is exempt from the provisions of the NLRA.

## II

■ Since we conclude that federal labor law is inapplicable and that this case is controlled solely by state law, we consider next whether plaintiffs' complaint is subject to the provisions of *N.J.S.A.* 32:1–163 governing suits for money damages against the Port Authority and, if so, whether plaintiffs complied with those provisions.

*N.J.S.A.* 32:1–163 provides in pertinent part:

The consent [to sue the Port Authority] is granted upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefor shall have accrued, and upon the further condition that *in the case of any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the Port Authority by or on behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced.*

[Emphasis added.]

The courts of New York and New Jersey have expansively construed this limitation upon the Port Authority's consent to suits for money damages. *See, e.g., Wood v. Dic/Underhill & Universal Builders Supply Co.,* 136 *N.J.Super.* 249, 345 *A.*2d 382 (Law Div.1975), *aff'd o.b.,* 144 *N.J.Super.* 364, 365 *A.*2d 723 (App.Div. 1976), *certif. denied,* 73 *N.J.* 65, 372 *A.*2d 330 (1977); *Williams v. Nat'l Car Rental Sys.,* 225 *N.J.Super.* 164, 541 *A.*2d 1125 (Law Div.1988); *Trippe v. Port of N.Y. Auth.,* 14 *N.Y.*2d 119, 249 *N.Y.S.*2d 409, 198 *N.E.*2d 585 (1964); *Lumbermens Mut. Cas. Co. v. Port Auth. of N.Y. & N.J.,* 137 *A.D.*2d 796, 525 *N.Y.S.*2d 343 (1988); *Faillace v. Port Auth. of N.Y. & N.J.,* 130 *A.D.*2d 34, 517 *N.Y.S.*2d 941, *appeal denied,* 70 *N.Y.*2d 613, 524 *N.Y.S.*2d 432, 519 *N.E.*2d 343 (1987). For example, in construing the New York counterpart of *N.J.S.A.* 32:1–163, *N.Y. Unconsolidated Laws* § 7107 (McKinney 1951), to apply to a claim that the flight of

airplanes over homes located near Kennedy Airport had resulted in an unconstitutional taking of the homeowners' properties the New York Court of Appeals stated:

> The sweeping coverage of chapter 301 simply makes impossible any exclusion therefrom of any particular kind of suits except those specifically excluded in other parts of chapter 301.
>
> [*Trippe v. Port of N.Y. Auth., supra,* 14 *N.Y.*2d 119, 249 *N.Y.S.*2d at 412, 198 *N.E.*2d at 587.]

Plaintiff's argument that the notice of claim requirement of *N.J.S.A.* 32:1–163 applies only to tort claims is inconsistent with the broad language of this provision and the expansive interpretation it has been given by the courts. The first clause of *N.J.S.A.* 32:1–163 creates a one-year statute of limitations with respect to "any suit, action or proceeding prosecuted or maintained under this act." Since we have rejected plaintiffs' contention that their claims are maintainable under federal labor law, and the Port Authority is immune from suit except as authorized under *N.J.S.A.* 32:1–157 *et seq., Port Auth. of N.Y. & N.J. v. Ingram,* 232 *N.J.Super.* 401, 557 *A.*2d 337 (App.Div.1989), plaintiff's suit, if maintainable at all, must "be maintained under this act." Moreover, plaintiffs' claim against the Port Authority, which seeks solely the "recovery ... of money," falls squarely within the terms of the second clause of *N.J.S.A.* 32:1–163, which requires service of a notice of claim upon the Port Authority at least sixty days before filing suit. Although *N.J.S.A.* 32:1–175 excludes labor proceedings seeking enforcement or review of an order of the Port Authority Employment Relations Panel from *N.J.S.A.* 32:1–161 and *N.J.S.A.* 32:1–165, which require the consent of the Attorney General of a compact state to an injunctive suit against the Port Authority, see *Evans–Aristocrat v. City of Newark,* 75 *N.J.* 84, 380 *A.*2d 268 (1977), this exclusion clearly has no applicability to a suit for money damages. Therefore, any suit against the Port Authority for money damages, including one arising out of a labor dispute, is subject to the procedural prerequisites of *N.J.S.A.* 32:1–163, including the requirement that a notice of claim be served at least sixty days before suit is filed. Since plaintiffs did not serve a notice of claim until April 12, 1988, which was the same day they

filed suit, plaintiffs clearly failed to comply with this procedural prerequisite.

■ Plaintiffs argue, relying upon *Zamel v. Port Auth. of N.Y.*, 56 *N.J.* 1, 264 *A.*2d 201 (1970), that they are not barred from maintaining their action against the Port Authority because they "substantially complied" with the notice of claim requirement of *N.J.S.A.* 32:1–163. In *Zamel*, the plaintiff, who was injured when he fell at Newark Airport, immediately reported the accident to a police officer and was contacted several days later by a representative of the Port Authority. Four months after the accident, plaintiff's attorney wrote a letter to the Port Authority inquiring as to "what disposition the Port Authority intended 'to make of this claim.'" *Id.* at 3, 264 *A.*2d 201. In response, the Port Authority sent a letter transmitting claim forms that stated that the forms "could be used, if so desired, '[a]lthough no particular form is necessary so long as it satisfies the requirements of the statute....'" *Ibid.* Plaintiffs' counsel failed to complete the claim forms but instead forwarded medical and hospital reports together with a letter which requested the Port Authority to communicate with his office "for an amicable adjustment of the above claim." *Ibid.* The Port Authority apparently failed to respond to this letter. Plaintiff subsequently filed suit, in response to which the Port Authority successfully moved for summary judgment on the ground that plaintiff had failed to comply with the notice of claim requirement. The Supreme Court reversed, stating:

> The record clearly indicates that the Port Authority was not prejudiced by the failure of the plaintiffs to comply strictly with the notice of claim requirement and that there was in fact essential fulfillment of its goals and substantial compliance with its terms. *N.J.S.A.* 32:1–164 states that the notice of claim shall set forth (1) the name and post-office address of each claimant and his attorney, (2) the nature of the claim, (3) the time when, the place where and the manner in which the claim rose, and (4) the items of damage or injuries claimed to have been sustained. The Authority had substantially all of this information well in advance of the sixty-day period prior to the filing of the complaint.
>
> [*Id.* at 6–7, 264 *A.*2d 201.]

In contrast, plaintiffs failed to submit any of the claims information required by *N.J.S.A.* 32:1–164 to the Port Authority prior to filing suit. Although plaintiffs' cause of action accrued no later than April 13, 1988, when the Port Authority and the Association negotiated and executed the collective bargaining agreement which plaintiffs claim adversely affected their rights, plaintiffs did not direct any form of communication to the Port Authority regarding their claims until one day less than a year later when on April 12, 1989, they simultaneously filed both a notice of claim and their complaint. Consequently, the Port Authority had no advance notice prior to that date that plaintiffs were contemplating filing suit and thus had no opportunity to investigate the claim or to engage in settlement discussions. To conclude under these circumstances that plaintiffs had substantially complied with the notice of claim requirement of *N.J.S.A.* 32:1–163 would effectively read this requirement out of the statute.

## III

Plaintiffs' claims against the Association were not subject to the notice of claim requirement of *N.J.S.A.* 32:1–163, which applies solely to claims against the Port Authority. However, since we have concluded in part I of this opinion that federal labor law is inapplicable to the Port Authority, the Association, as the labor representative of the Port Authority's employees, is also exempt from the requirements of federal labor law. *Crilly v. Southeastern Pa. Transp. Auth., supra,* 529 *F.*2d at 1357 n. 5. Therefore, plaintiffs' claims against the Association, which were based upon federal labor law, also must be dismissed.

Furthermore, plaintiffs failed to avail themselves of the remedies provided by the "Labor Relations Instruction" adopted by the Port Authority to govern labor relations with its employees and their representatives, which provides that "[i]t shall be an improper practice for an employee organization ... deliberately ... to refuse to negotiate wages, hours, benefits and conditions of employment in good faith with the Authority." Plaintiffs suggest

that if we conclude that federal labor law is inapplicable, we should transfer this matter to the Port Authority for a hearing in accordance with the procedures set forth in the Labor Relations Instruction. However, this document expressly requires any improper labor practice charge to be filed and served "within three months from the time of such alleged improper practice." Since plaintiffs failed to invoke the remedies set forth in the Labor Relations Instruction in a timely manner, there is no basis for us now to transfer this matter to the Port Authority.

## IV

We turn finally to the trial court's *sua sponte* order conditioning the dismissal of plaintiffs' complaint upon the parties entering into "binding arbitration." Although the collective bargaining agreement between the Port Authority and the Association provides for the arbitration of certain employee grievances, plaintiffs never attempted to invoke this provision. Instead, the only relief demanded by plaintiffs' complaint was compensatory and punitive damages. Moreover, plaintiffs did not amend their complaint to seek arbitration or even suggest that the court should order such relief during the entire four year period that this matter was pending before the trial court. Therefore, the trial court's order conditioning the dismissal of this action upon the parties submitting to binding arbitration violated the fundamental procedural rule that a court "cannot enter a judgment which is beyond the claim asserted, or which, in its essential character, is not responsive to the cause of action on which the pleading was based." *Sattelberger v. Telep*, 14 *N.J.* 353, 363, 102 *A.*2d 577 (1954) (quoting *Standard Oil Co. of Ind. v. Missouri ex rel Hadley*, 224 *U.S.* 270, 281, 32 *S.Ct.* 406, 409, 56 *L.Ed.* 760, 767 (1912)); *see also R. Wilson Plumbing & Heating, Inc. v. Wademan*, 246 *N.J.Super.* 615, 617, 588 *A.*2d 444 (App.Div.1991).

Furthermore, the trial court failed to identify any statutory or contractual authority for its order requiring binding arbitration. Except when there is a statutory duty to arbitrate a

particular type of dispute, which is absent here, "the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement." *Cohen v. Allstate Ins. Co.,* 231 *N.J.Super.* 97, 101, 555 *A.*2d 21 (App.Div.), *certif. denied,* 117 *N.J.* 87, 563 *A.*2d 846 (1989). Thus, a party seeking to pursue contractual arbitration must comply with the procedural requirements for arbitration set forth in the contract. *Duerlein v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 261 *N.J.Super.* 634, 639–40, 619 *A.*2d 664 (App.Div.1993).

The only section of the Agreement between the Port Authority and the Association providing for the arbitration of employee grievances contains strict procedural prerequisites, including the exhaustion of "step one" and "step two" grievances and the filing of an arbitration demand "not later than twenty (20) working days following receipt of the Step Two determination." The Agreement also provides that "the President of the Association or his designee shall have the exclusive right to refer to arbitration any unsettled grievance." Since it is undisputed that plaintiffs failed to satisfy these procedural prerequisites to the arbitration of an employee grievance under the Agreement, there would have been no basis for the trial court to order the parties to submit to arbitration even if plaintiffs had sought that relief.

Finally, plaintiffs' arguments based on the doctrines of promissory and equitable estoppel are clearly without merit. *R.* 2:11–3(e)(1)(E).

Accordingly, we reverse the order of January 5, 1994, insofar as it conditions the dismissal of plaintiffs' complaint upon the parties submitting to binding arbitration, affirm in all other respects, and remand for entry of judgment dismissing plaintiffs' complaint with prejudice against both the Port Authority and the Association.