**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4137-18T2

IN RE: THE MATTER OF THE
ALLEGED IMPROPER PRACTICE
UNDER SECTION XI
PARAGRAPH A(d) OF THE PORT
AUTHORITY LABOR RELATIONS
INSTRUCTION, FINAL DECISION
AND ORDER OF THE PORT
AUTHORITY EMPLOYMENT
RELATIONS PANEL, PORT
AUTHORITY OF NEW YORK AND
NEW JERSEY,

      Plaintiff-Appellant,

v.

THE PORT AUTHORITY
EMPLOYMENT RELATIONS
PANEL,

      Defendant-Respondent,

and

PORT AUTHORITY POLICE
BENEVOLENT ASSOCIATION, INC.,

      Defendant/Intervenor-Respondent.

Argued October 26, 2020 - Decided November 30, 2020

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2723-18.

Cheryl Alterman argued the cause for appellant (The Port Authority Law Department, attorney; Sharon K. McGahee, on the briefs).

Christine R. Lucarelli argued the cause for respondent The Port Authority Employment Relations Panel (New Jersey Public Employment Relations Commission, attorney; Christine R. Lucarelli, on the brief).

John W. Bartlett argued the cause for intervenor-respondent Port Authority Police Benevolent Association, Inc. (Murphy Orlando LLC and D. John McAusland, attorneys; Jason F. Orlando, John W. Bartlett, and D. John McAusland, on the brief).

PER CURIAM

Plaintiff Port Authority of New York and New Jersey (Port Authority) appeals from an April 11, 2019 order dismissing its complaint in lieu of prerogative writs and upholding a final agency decision issued by defendant Port Authority Employment Relations Panel (Panel). We reverse.

Defendant-intervenor Port Authority Police Benevolent Association, Inc. (PBA) filed an improper practice complaint against the Port Authority, alleging the Port Authority violated the terms of the parties' employment agreement by

failing to conform to safety standards promulgated by the Occupational Safety and Health Administration (OSHA).

The parties dispute whether OSHA applied to uniforms worn by members of the Port Authority's aircraft rescue and firefighting (ARFF) department under their personal protection equipment (PPE). The uniforms were made of polyester, rather than cotton, and were potentially dangerous in extreme heat. The PBA alleged the Port Authority violated its agreement with PBA members by not issuing cotton uniforms, conforming to OSHA standards, until almost two years after discovery of the non-compliant polyester uniforms.

ARFF personnel are assigned to firefighting responsibilities at area airports in New York and New Jersey operated by the Port Authority. The Port Authority issues PPE gear to ARFF personnel. PPE, also known as "bunker gear," is the outer layer of protective clothing worn by ARFF members while fighting fires.

Underneath the bunker gear, ARFF members don "station wear" or battle dress uniforms (BDUs). BDUs are the uniform worn by ARFF members in the station house and resemble a patrol or police uniform. In 2014, the material for the BDU attire was sixty-five percent polyester and thirty-five percent cotton.

3

The National Fire Protection Association (NFPA) develops "codes, standards, recommended practices, and guides . . . developed through a consensus standards development process approved by the American National Standards Institute." The PBA claimed OSHA uses "NFPA standards as the standard of care for firefighter[s]," and that NFPA 1975 set the standard for the clothing to be worn by ARFF members.

In 2014, the Port Authority recognized BDUs should have been compliant with NFPA 1975 because polyester uniforms posed a safety risk and could cause injury to individuals upon exposure to extreme heat. In accordance with NFPA 1975, BDUs should be cotton or Nomex blend because those materials do not melt under intense heat.

The Port Authority began the process of evaluating and switching BDUs from polyester to cotton in 2014. The change to cotton BDUs took two-years because the Port Authority required a full risk assessment, approval from the uniform committee, location of a vendor to provide a large quantity of cotton BDUs, and a signed contract. On June 22, 2016, the Port Authority received the cotton BDUs.

The Port Authority Board of Commissioners adopted the Labor Relations Instruction (LRI) to govern labor relations with its employees and their

A-4137-18T2

representatives. See Brown v. Port Auth. Police Superior Officers Ass'n, 283 N.J. Super. 122, 136 (App. Div. 1995). In accordance with the LRI, the Port Authority is empowered to engage in collective bargaining with the PBA regarding terms and conditions for union employees. The Panel is authorized to adjudicate disputes arising under the LRI.

On August 19, 2015, the PBA filed Improper Practice Number 15-35 (IP-15-35). The PBA alleged the Port Authority violated Article XLII of the parties' Memorandum of Agreement (MOA), requiring compliance with OSHA-promulgated safety standards for ARFF uniforms. The PBA's improper practice charge was referred to the Panel for resolution.

An improper practice claim is governed by Article XI of the LRI. Article XI, entitled "Improper Practices," provides in relevant part as follows:

> A. Practices by or on Behalf of Employer
>
> It shall be an improper practice for the Authority or its agents or designees deliberately (a) to interfere with, restrain or coerce employees of the Authority in the exercise of the rights granted in Paragraph A of Section II of this Instruction for the purposes of depriving them of such rights; . . . . (d) to refuse to negotiate salaries, wages, hours, and other terms and conditions of employment in good faith with the duly recognized representative of its employees . . . .

In IP-15-35, the PBA alleged the Port Authority violated LRI Section XI(A)(a) and Section XI(A)(d):

> [B]y failing to conform with occupational safety and health standards promulgated by OSHA with respect to the station house uniform issued and required to be worn by members of the [ARFF] details . . . .
>
> Members are required to wear police battle dress uniforms (BDU's) made of a synthetic blend material that is not fire resistant and poses a risk of burning and/or melting, if exposed to extreme heat.
>
> This Improper Practice [charge] is filed on behalf of all police officers assigned to ARFF functions at Newark Liberty International Airport/Teterboro Airport, LaGuardia Airport and John F. Kennedy International Airport.

The PBA also claimed the Port Authority violated Section XLII (1) and (2) of the MOA. Section XLII of the MOA, addressing "Safety and Health Standards," provides:

> 1) The Port Authority represents that it attempts to conform with and that it does basically conform with the Occupational Health and Safety Standards promulgated by OSHA.
>
> 2) If it is established that the Port Authority does not basically conform with OSHA standards, the Port Authority will make every good faith effort to come into conformance.

A-4137-18T2

The Occupational Health and Safety Act (Act), authorizes the United States Secretary of Labor to promulgate occupational safety or health standards for employees. 29 U.S.C. § 655; 29 C.F.R. § 1910.1(a). The Act contains a "general duty clause," requiring every employer "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees . . . ." 29 U.S.C. § 654(a)(1).

OSHA's regulations provide:

> Protective equipment, including personal protective equipment for . . . extremities, [and] protective clothing . . . shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards and processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation[,] or physical contact.
>
> [29 C.F.R. § 1910.132(a).]

Section 1910.132(c) states "[a]ll personal protective equipment shall be of safe design and construction for the work to be performed." 29 C.F.R. § 1910.32(c).

On November 3, 2015, the Port Authority filed a denial of the allegations in IP-15-35. The Panel Chairman appointed a hearing officer, who conducted hearings on ten non-consecutive days over the course of eighteen months. Upon

the completion of the hearings, in an August 15, 2017 report, the hearing officer recommended the allegations regarding the Port Authority's issuance of non-cotton BDUs be sustained. On February 8, 2018, the Panel issued a tentative decision and order, upholding the hearing officer's recommendations.

After receiving comments from the parties, the Panel issued a June 12, 2018 final decision and order. The Panel found the Port Authority's actions did not conform with OSHA-promulgated standards, and the nearly two years it took for the Port Authority to comply with OSHA standards demonstrated a lack of good faith contrary to the MOA.

The Panel found OSHA encompassed the NFPA standards for firefighting gear used by ARFF members. The Panel determined the Port Authority violated Article XLII because the polyester BDUs worn by the ARFF members under their PPE for two years did not satisfy OSHA's general duty clause and therefore violated the parties' MOA. The Panel also agreed the Port Authority failed to make a good faith effort to bring BDUs into conformance with the applicable standards. As a result, the Panel sustained IP-15-35 and ordered the Port Authority to "cease and desist from unilaterally changing terms and conditions of employment" and post notice of the violation.

On July 12, 2018, the Port Authority filed an action in lieu of prerogative writs in the Superior Court, challenging the Panel's final decision and order. The Panel filed an answer and affirmative defenses. The PBA filed a motion to intervene, which the trial judge granted.

The Panel and the PBA filed motions to dismiss the Port Authority's action and enter a judgment upholding the Panel's decision and order. The Port Authority filed opposition to the motions. After hearing counsels' arguments, the trial judge requested supplemental briefs relating "the obligation under the MOA of the Port Authority to comply with OSHA to NFPA 1975."

In an April 11, 2019 order and letter opinion, the judge upheld the Panel's final decision and order and dismissed the Port Authority's action. The judge concluded the Panel's decision was not arbitrary, capricious, or unreasonable, and was supported by substantial credible evidence in the record. She held, "[T]he policy encouraging safety can be found in the MOA's section regarding OSHA conformance" and "the fact that NFPA 1975 is not specifically codified in any federal regulation is not sufficient, when considering the entirety of the record before the Panel to hold that the Panel clearly erred . . . ." She also declined to disturb the Panel's determination that the Port Authority "did not act in good faith to supply the [ARFF members] with cotton BDU's fast enough."

The judge reasoned, "[F]unctionally equivalent and properly fitting cotton BDU's could have been obtained much earlier than [two] years."

On appeal, the Port Authority argues NFPA 1975 is inapplicable to BDUs and therefore it did not violation OSHA. Absent an OSHA violation, the Port Authority asserts the Panel and the judge erred by finding it violated the MOA. The Port Authority contends the Panel and trial judge misapplied the law in finding the non-cotton BDUs violated the MOA because the standard in NFPA 1975 was not promulgated by OSHA nor adopted through OSHA's "general duty" clause.

Because the Panel is an administrative agency, our review of the Panel's decision is limited. See In re Alleged Improper Practice under Section XI, Paragraph A(d) of the Port Auth. Lab. Rels. Instruction, 194 N.J. 314, 330-331 (2008). We accord a deferential standard of review to an agency's determination unless the decision was arbitrary, capricious, unreasonable, or lacked credible support in the record. Id. at 331-32. We may also reverse if the agency failed to follow the law. Ibid. (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

Whether the trial judge applied the correct standard of review "is a question of law and thus our review is plenary." ERG Container Servs., Inc. v. Bd. of Chosen Freeholders, 352 N.J. Super. 166, 173 (App. Div. 2002) (citing

10

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review de novo the "trial court's interpretation of the law and the legal consequences that flow from established facts . . . ." Manalapan Realty, L.P., 140 N.J. at 378 (citing State v. Brown, 118 N.J. 545, 604 (1990)).

Applying these standards, we consider the Port Authority's challenge to the determinations rendered by the Panel and trial judge. At issue in the PBA's improper practice charge are the standards adopted by the National Fire Prevention Association (NFPA).[1] Specifically, the parties dispute whether NFPA 1975 is an OSHA standard governing BDUs. If, as argued by the Port Authority, NFPA 1975 is not an OSHA standard applicable to BDUs, then there was no OSHA violation and the Port Authority did not violate the MOA.

NFPA 1971 is the "Standard on Protective Ensembles for Structural Fire Fighting and Proximity Fire Fighting." The Port Authority admits OSHA enforces NFPA 1971 under its general duty clause and agrees OSHA incorporated NFPA 1971 by reference. 29 C.F.R. § 1910.6 (a), (t)(34).

---

[1] The NFPA is a global non-profit organization "devoted to eliminating death, injury, [and] property and economic loss due to fire, electrical[,] and related hazards." NFPA Overview, NAT'L FIRE PROT. ASS'N, www.nfpa.org/about-nfpa/nfpa-overview (last visited Nov. 4, 2020).

11

However, the Port Authority contends NFPA 1971 pertains only to PPE and not "station wear" or BDUs.

The standard adopted in NFPA 1971 "establish[ed] minimum levels of protection for fire fighting personnel assigned to fire department operations including but not limited to structural fire fighting, proximity fire fighting, rescue, emergency medical, and other emergency first responder functions." NFPA 1971, §1.21. NFPA 1971 applied specifically to "new structural fire fighting protective ensembles[2] . . . for protection . . . during structural firefighting operations." NFPA 1971, §1.14.

NFPA 1975 is the "Standard on Emergency Services Work Clothing Elements." Pursuant to NFPA 1975, "work apparel" is defined as "[n]onprimary protective garments . . . that are intended to be worn by emergency personnel while on duty." NFPA 1975, §3.3.27. NFPA 1975 defines "nonprimary protective garment," as "[a] garment or clothing that is not designed nor intended to be the barrier of protection from a specific hazard exposure." NFPA 1975, §3.3.18.

---

[2] "Structural fire fighting protective ensemble" is defined as "[m]ultiple elements of compliant protective clothing and equipment that when worn together provide protection from some risks consent, but not all risks of emergency incident operations." NFPA 1971, §3.3.127.

The purpose of the standard in NFPA 1975 is to "provide emergency services personnel with work apparel that will not contribute to burn injury severity." NFPA 1975, §1.2.1. "To achieve this purpose, this standard shall establish minimum requirements for thermally stable textiles that will not rapidly deteriorate, melt, shrink, or adhere to the wearer's skin, causing greater, more severe burn injuries." NFPA 1975, §1.2.1.1. Consequently, textile fabrics must be tested for "heat resistance," and "shall not melt, drip, separate, or ignite, and shall not shrink more than [ten] percent in any direction." NFPA 1975, §7.1.1.1. Section 1.2.1.2 of NFPA 1975 provides "optional flame resistance requirements and tests to verify the flame resistance of textiles where the authority having jurisdiction specifies the use of flame resistance textiles for the construction of work apparel, or where the manufacturer represents work apparel textiles as flame resistant."

The requirements of NFPA 1975 apply to the "design, performance, testing, and certification of nonprimary protective work apparel and the individual garments comprising work apparel" and the "designing, manufacturing, testing, and certification of new work apparel and the individual garments comprising work apparel." NFPA 1975, §1.1.1; NFPA 1975, §1.3.1. NFPA 1975 expressly excludes "clothing that is intended to provide primary

A-4137-18T2

protection from given hazard exposures" and "shall not apply to the use of work apparel." NFPA 1975, §1.1.5; NFPA 1975, §1.3.6.

The explanatory material accompanying this provision confirms NFPA 1975 is inapplicable to work apparel. The explanatory notation states, "[e]mergency services organizations . . . should determine what requirements for use of work apparel apply in their jurisdiction." NFPA 1975, §1.3.6.

The Port Authority argues the Panel and trial judge improperly concluded NFPA 1975 applies to the Port Authority through OSHA's general duty clause and the MOA. The Port Authority contends NFPA 1975 is inapplicable under the general duty clause because it is neither mandatory nor a standard promulgated by OSHA.

"The general duty clause was intended by Congress to cover unanticipated hazards; Congress recognized that it could not anticipate all of the potential hazards that might affect adversely the safety of workers." Teal v. E.I. Dupont de Nemours & Co., 728 F.2d 799, 804 (6th Cir. 1984). If no promulgated OSHA standards apply, then "the employer is subject to the general duty [clause] to 'furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or

serious physical harm to his employees.'" Brennan v. Butler Lime & Cement Co., 520 F.2d 1011, 1017 n.9 (7th Cir. 1975) (quoting 29 U.S.C. § 654(a)(1)).

In a Tenth Circuit case, the court noted the Secretary of Labor had "recognized that only mandatory standards should be seen as national consensus standards:"

> The national consensus standards contain only mandatory provisions of the standards promulgated by those two organizations. ([American National Standards Institute] and [NFPA].) The Standards of ANSI and NFPA may also contain advisory provisions and recommendations the adoption of which by employers is encouraged, but they are not adopted in Part 1910 [of the regulations].
>
> [Usery v. Kennecott Copper Corp., 577 F.2d 1113, 1118 (10th Cir. 1977) (quoting 36 Fed. Reg. 10466 (May 29, 1971)).]

Section 1910.6 of OSHA's regulations enumerates government agency and private organization standards that OSHA incorporated by reference, declaring those recognized standards "have the same force and effect as other standards in this part." 29 C.F.R. § 1910.6(a)(1). Thirty-seven NFPA provisions are identified in this section, including NFPA 1971; however, NFPA 1975 is not incorporated by reference. 29 C.F.R. § 1910.6(t).

The MOA requires the Port Authority to comply with safety standards promulgated by OSHA. There is no specific standard in OSHA addressing

15

BDUs for firefighters. Thus, only OSHA's general duty clause could be invoked to find the Port Authority violated the MOA. The question is whether the general duty clause renders NFPA 1975 applicable to the Port Authority as an OSHA standard requiring the Port Authority's compliance under the MOA.

While the general duty clause may cover "recognized hazards" in the absence of an actually promulgated standard, the NFPA standard must be mandatory as opposed to a standard that "should" be followed or adopted by the Port Authority.

Federal courts have recognized that when an NFPA standard adopts a "should" standard, rather than a mandatory "shall" standard, OSHA could not promulgate it as a mandatory standard and would need to follow the procedural rulemaking process to create a mandatory standard. See Marshall v. Pittsburgh-Des Moines Steel Co., 584 F.2d 638, 643-44 (3d Cir. 1978); Usery, 577 F.2d at 1118.

The PBA contends NFPA 1975 is an OSHA standard applicable to the Port Authority through the general duty clause. However, none of the documents or cases cited by the PBA in support of this argument specifically address NFPA 1975 or support the position that NFPA 1975 is a mandatory standard to be followed by the Port Authority under OSHA and the MOA.

The PBA relies on a Third Circuit case, <u>Voegele Co. v. Occupational Safety & Health Rev. Comm'n</u>, 625 F.2d 1075 (3d Cir. 1980), in support of its argument that courts have adopted standards that would render NFPA 1975 applicable to the Port Authority under the general duty clause. However, the <u>Voegele</u> case does not inform our analysis regarding the applicability of NFPA 1975 through the general duty clause because the PBA failed to establish that OSHA considered NFPA 1975 a mandatory standard or otherwise intended to incorporate NFPA 1975 into the Act.

Here, NFPA 1975 specifically states that it "shall not apply to the use of work apparel" and leaves the determination of the requirements for work apparel to the individual emergency service organizations. While NFPA 1975 is a standard by which the BDUs should comply, it was not mandatory for the Port Authority to adhere to NFPA 1975 as a promulgated OSHA standard or under the general duty clause. OSHA did not incorporate NFPA 1975 by reference and NFPA 1975 specifically allows ARFF members to determine their own standards.

In the absence of OSHA adopting NFPA 1975, there could be no violation of the MOA by the Port Authority. Therefore, the Panel and the trial judge misapplied the law in finding the Port Authority's failure to comply with NFPA

17

1975 violated a standard promulgated by OSHA and, consequently, violated the parties' MOA. In the absence of any violation on the part of the Port Authority, we need not address whether the Port Authority lacked good faith in remedying the violation.

In sum, we reverse and remand to the trial court for the entry of an order vacating the April 11, 2019 order dismissing the Port Authority's action in lieu of prerogative writs and instruct the trial court to enter an order dismissing the PBA's improper practice charge.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4137-18T2