57 A.3d 54

ENID SANTIAGO, PLAINTIFF–APPELLANT, v. NEW YORK & NEW JERSEY PORT AUTHORITY, TUNNEL & BRIDGE AGENT GREGORY NOA, INDIVIDUALLY, JOINTLY AND SEVERALLY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 25, 2012—Decided December 5, 2012.

152

Before Judges MESSANO, LIHOTZ and OSTRER.

*Louis A. Zayas* argued the cause for appellant (*Law Offices of Louis A. Zayas, L.L.C.,* attorneys; *Mr. Zayas* and *Carolyn Corrado,* on the brief).

*Cheryl Alterman* argued the cause for respondents (*Margaret Taylor Finucane* (Port Authority of N.Y. and N.J.), New Jersey Solicitor, attorney; *Ms. Alterman* and *Jonathan P. Meinen,* on the brief).

The opinion of the court was delivered by

CARMEN MESSANO, P.J.A.D.

On October 12, 2010, plaintiff Enid Santiago filed a complaint against defendant the Port Authority of New York and New Jersey (the Port Authority), and one of its employees, Tunnel and Bridge Agent Gregory Noa. Plaintiff alleged: violations of the New Jersey Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –14; the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49; common law claims for abuse of process, interference with contractual rights, and defamation; and claims for violations under the State constitution. As to Noa, the complaint indicated he was "sued in his individual capacity for the purpose of effecting the compensatory and punitive damages demanded by … [p]laintiff. . . ."

On April 12, 2011, prior to filing an answer and relying upon *N.J.S.A.* 32:1–163, defendants moved to dismiss the complaint. That statute provides in relevant part:

[A]ny suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefor shall have accrued, and ... *in the case of any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the Port Authority by ... the plaintiff ... at least sixty days before such suit, action or proceeding is commenced.*

[*Ibid.* (emphasis added).]

Defendants contended that because plaintiff admittedly failed to serve any notice of claim prior to filing her complaint, the court

lacked subject matter jurisdiction. The motion judge agreed and entered an order dismissing the complaint "because of [p]laintiff's failure to comply with the statutory prerequisites set forth in *N.J.S.A.* 32:1–163 and *N.J.S.A.* 32:1–164." [1]

On appeal, plaintiff argues that the judge erred as a matter of law because the Port Authority "has implicitly consented to New Jersey's jurisdiction" since both New Jersey and New York have "enact[ed] similar legislation to eradic[ate] unlawful employment practices in the workplace," and "no notice of claim was required to be filed before ... filing ... suit." Additionally, plaintiff contends that her constitutional claims, cognizable under New Jersey's Civil Rights Act, *N.J.S.A.* 10:5–1 to –2 (the CRA), "appl[y] to the Port Authority." [2] We have considered these arguments in light of the record and applicable legal standards. We affirm.

I.

To place the issues in proper context, we recite some of the allegations contained in plaintiff's complaint, which, for purposes of our review, we accept as true. *See Union Ink Co. v. AT&T Corp.*, 352 *N.J.Super.* 617, 627, 801 *A.*2d 361 (App.Div.) ("For the

---

[1] *N.J.S.A.* 32:1–164 sets forth the required contents of any notice of claim and provides relief from the notice requirements by extending the sixty-day period in limited circumstances, none of which are present here.

[2] Since plaintiff has not raised any argument with respect to the dismissal of her common law claims, we deem the issue waived. *Gormley v. Wood–El*, 422 *N.J.Super.* 426, 437 n. 3, 29 *A.*3d 336 (App.Div.2011). Moreover, plaintiff's brief does not address the propriety of the order as it relates to Noa. And, although we questioned counsel about that issue during oral argument, we conclude that any appeal from the order as it relates to Noa was not properly raised on appeal, and we refuse to consider it at this time. *See Selective Ins. Co. of Am. v. Rothman*, 208 *N.J.* 580, 34 *A.*3d 769 (2012) (noting that appellant's counsel's reference to an issue during oral argument did not "require the Appellate Division to address it"). After filing her notice of appeal, plaintiff also filed a complaint in the United States District Court for the District of New Jersey. We were advised at oral argument that the District Court has delayed action pending resolution of this appeal.

limited purposes of the underlying motion to dismiss ... for lack of jurisdiction over the subject matter, ... we must accept as true the allegations of the complaint."), *certif. denied,* 174 *N.J.* 547, 810 *A.*2d 66 (2002).

Plaintiff was hired by the Port Authority on October 17, 2008, as a recruit for its police academy. On April 13, 2009, she was sworn in as a police officer. Pursuant to Port Authority policy, plaintiff began to serve a one-year probationary period after which her status would become "permanent." As a permanent police officer, she could be terminated "only upon a showing of good cause after an administrative hearing."

On October 6, 2009, plaintiff was assigned to the Lincoln Tunnel to supervise traffic. Plaintiff responded to an "over-height" alarm, i.e., the height of a trailer truck exceeded that permitted in the tunnel. While plaintiff tried to redirect the truck, Noa, who was a civilian employee and not authorized to direct traffic, also began to do so, thereby "creating unnecessary confusion and danger." Noa ignored plaintiff's orders to cease and ultimately caused the truck to crash into another vehicle.

Plaintiff filed an official complaint regarding Noa's conduct and claimed it "jeopardize[d] the safety and security of ... motorist[s] who use the ... Tunnel." Two other male police officers who responded to plaintiff's call for assistance filed similar complaints regarding Noa. Plaintiff claimed that Noa had "political connections to top management in [the] Port Authority," insulating him from any discipline. After plaintiff's complaint was filed, Noa and other unknown individuals "caused [the] Port Authority to initiate a sham internal affairs investigation to discredit" plaintiff.

Despite "performing her duties and responsibilities in a satisfactory manner," the Port Authority terminated plaintiff's employment one day before the end of her probationary period. A week after her termination, a high-ranking officer announced at roll call that plaintiff was "terminated ... [for] having filed a false police report." The two other officers who filed complaints against Noa

were not disciplined in any manner. The record is void as to the resolution of the complaint against Noa.

It is undisputed that plaintiff did not serve any notice of claim upon the Port Authority or Noa prior to filing suit. Additionally, the record is void of any correspondence from plaintiff, or by someone on her behalf, that placed defendants on notice of her alleged claims.

## II.

Pursuant to *Rule* 4:6–2(a), a party may raise the defense of "lack of jurisdiction over the subject matter" by motion prior to filing any pleading. Whether subject matter jurisdiction exists presents a purely legal issue, *Marshak v. Weser*, 390 *N.J.Super.* 387, 390, 915 *A.*2d 613 (App.Div.2007) (citing *Manalapan Realty v. Manalapan Twp. Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995)), which we review de novo. As a result, the motion judge's "interpretation of the law ... [is] not entitled to any special deference." *Manalapan Realty, supra,* 140 *N.J.* at 378, 658 *A.*2d 1230.

The Port Authority was created by "a bi-state compact enacted into law by the legislatures of New York and New Jersey and approved by Congress." *Brown v. Port Auth. Police Superior Officers Ass'n,* 283 *N.J.Super.* 122, 130, 661 *A.*2d 312 (App.Div. 1995) (citing *Hess v. Port Auth. Trans–Hudson Corp.,* 513 *U.S.* 30, 35, 115 *S.Ct.* 394, 398, 130 *L.Ed.*2d 245, 252 (1994)). Plaintiff does not contend that the compact has explicitly been modified to recognize her claims under the LAD, CEPA or the CRA. Instead she argues that, because the LAD and CEPA are substantially similar to legislation enacted by New York, the Port Authority has implicitly consented to being sued for such claims. As to the CRA, plaintiff contends that it, too, applies to the Port Authority because application "would not interfere with the operations of the Port Authority or its stated mission." She further contends that because New Jersey does not impose a notice requirement before filing a complaint alleging causes of action under these statutes, it was error to conclude that the court lacked subject matter juris-

diction because of plaintiff's failure to comply with *N.J.S.A.* 32:1–163.

We first look to the statutory framework governing the Port Authority, which has "the powers and jurisdiction . . . enumerated" in the compact, "and such other and additional powers as shall be conferred upon it by the Legislature of either State *concurred in by the Legislature of the other,* or by Act or Acts of Congress. . . ." *N.J.S.A.* 32:1–4 (emphasis added). Therefore, "[t]he Port Authority is not the agency of a single state but rather a public corporate instrumentality of New Jersey and New York[,]" *Bunk v. Port Auth. of N.Y. and N.J.,* 144 *N.J.* 176, 184, 676 *A.*2d 118 (1996), and, "neither creator state may unilaterally impose additional duties, powers, or responsibility upon the [Port] Authority." *Ibid.* (citing *Nardi v. Del. River Port Auth.,* 88 *Pa.Cmwlth.* 558, 490 *A.*2d 949, 950 (1985) (citation omitted)). Our Supreme Court has said that "[t]o sanction such practice would lead to discord and a destruction of the purposes for which such bi-state agencies are formed." *Bell v. Bell,* 83 *N.J.* 417, 424, 416 *A.*2d 829 (1980) (citation omitted).

Nonetheless, "[t]he corollary of the proposition that neither state may unilaterally impose its legislative will on the bi-state agency is that the agency may be subject to complementary or parallel state legislation[,]" *Bunk, supra,* 144 *N.J.* at 184, 676 *A.*2d 118 (citing *Del. River Joint Toll Bridge Comm'n v. Colburn,* 310 *U.S.* 419, 60 *S.Ct.* 1039, 84 *L.Ed.* 1287 (1940)), "that does not intrude on the mission of the agency." *Ampro Fisheries v. Yaskin,* 127 *N.J.* 602, 610, 606 *A.*2d 1099 (1992) (citing *E. Paralyzed Veterans Ass'n, Inc. v. City of Camden,* 111 *N.J.* 389, 400, 545 *A.*2d 127 (1988)).

"Under the 'complementary or parallel legislation' principle, one compact state's statute can be applied to the bi-state agency if it is 'substantially similar' to an enactment of the other state." *Ballinger v. Del. River Port Auth.,* 172 *N.J.* 586, 594, 800 *A.*2d 97 (2002) (quoting *E. Paralyzed Veterans Ass'n, supra,* 111

*N.J.* at 401, 545 *A.*2d 127). "In order to be deemed substantially similar, the two laws at issue must evidence some showing of agreement." *Id.* at 600, 800 *A.*2d 97 (quotation and citation omitted).

■ We need not decide whether the LAD or CEPA are substantially similar to New York's legislation such that the compact is violated by application of either statute to the Port Authority.[3] Nor need we address whether the CRA applies to the Port Authority because the statute "does not intrude on the mission of the agency." Instead, assuming arguendo that these statutes do apply, we consider the necessary corollary to plaintiff's argument. She contends that because these statutes apply to the Port Authority, the notice requirement of *N.J.S.A.* 32:1–163 has been impliedly repealed because New Jersey does not require any pre-suit notification under the LAD, CEPA or the CRA. We disagree.

"Prior to 1951 the Port Authority was immune from suit." *Wood v. Dic/Underhill & Universal Builders Supply Co.*, 136 *N.J.Super.* 249, 252, 345 *A.*2d 382 (Law Div.1975), *aff'd o.b.*, 144 *N.J.Super.* 364, 365 *A.*2d 723 (App.Div.1976), *certif. denied,* 73 *N.J.* 65, 372 *A.*2d 330 (1977). *N.J.S.A.* 32:1–157 now provides that,

[3] The Port Authority has, however, brought to our attention a recent decision of the Third Circuit, *hip Heightened Independence and Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 *F.*3d 345 (3rd Cir.2012). There, the plaintiffs, who asserted claims under the LAD, cross-appealed "the District Court's dismissal of their state-law claims on the basis that the application of state law to an agency operating under an interstate compact is permissible only if provided for in the compact." *Id.* at 356. Although the plaintiffs did not "contend that there [wa]s an implied agreement based on parallel legislation to amend the compact," they "claim[ed] that while a state cannot regulate the Authority's internal operations on its own, it can regulate the external conduct of the agency." *Id.* at 357. However, in affirming the grant of summary judgment to the Port Authority on the plaintiffs' state-law claims, the court rejected the argument and tellingly noted that "even though [the Third Circuit did] not recognize implicit modifications of an interstate compact as the New Jersey Supreme Court might, *both jurisdictions require evidence of mutual intent to alter a compact and regulate the bi-state agency,* regardless of whether the action taken by the agency is 'external' or 'internal.' " *Id.* at 358 n. 3 (emphasis added).

with certain exceptions not applicable here, "the States of New York and New Jersey consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise . . . against the [Port Authority], and to appeals therefrom and reviews thereof." *See Wood, supra,* 136 *N.J.Super.* at 252, 345 *A.*2d 382 ("By joint legislation which became effective June 13, 1951, sovereign immunity was waived and consent was given to suits against th[e] agency."). "[I]n the absence of the 1951 waiver the [Port] Authority would continue to enjoy the protection of sovereign immunity." *Port Auth. of N.Y. v. Ingram,* 232 *N.J.Super.* 401, 404, 557 *A.*2d 337 (App.Div.1989).

The scope of the Port Authority's statutory consent, as set forth in *N.J.S.A.* 32:1–162, "is broader . . . than that used for many other agencies." *Lieberman v. Port Auth. of N.Y. & N.J.,* 132 *N.J.* 76, 83, 622 *A.*2d 1295 (1993). That statute provides that the "two States consent to liability on the part of the Port Authority in such suits, actions or proceedings for tortious acts committed by it and its agents to the same extent as though it were a private corporation." *N.J.S.A.* 32:1–162. The *Lieberman* Court concluded that the Port Authority's "amenability to suit in the exercise of non-governmental functions is broader than that of agencies authorized only to 'sue and be sued.'" *Lieberman,* 132 *N.J.* at 84, 622 *A.*2d 1295.

█ Whatever the scope of this consent may be, however, it is expressly conditioned upon compliance with the notice provisions of *N.J.S.A.* 32:1–163. *See id.* ("[t]he foregoing consent is granted upon the condition[s]" that the suit be commenced within one year of accrual and "upon the further condition" that notice be given at least sixty days before the suit is filed). "Unlike a statute of limitations, the requirements are jurisdictional." *Campanello v. Port Auth.,* 590 *F.Supp.*2d 694, 701 (D.N.J.2008) (quoting *Matthews v. Port of N.Y. Auth.,* 163 *N.J.Super.* 83, 85, 394 *A.*2d 172 (Law Div.1978), *aff'd,* 171 *N.J.Super.* 38, 407 *A.*2d 1255 (App.Div. 1979)).

"The courts of New York and New Jersey have expansively construed this limitation upon the Port Authority's consent to suits for money damages." *Brown, supra,* 283 *N.J.Super.* at 133, 661 *A.*2d 312 (citations omitted); *and see Matthews, supra,* 163 *N.J.Super.* at 85, 394 *A.*2d 172 (noting that because the waiver of immunity is "an act in derogation of the common law," the time "requirements must be strictly construed as conditions precedent to the bringing of suit"). In *Port Auth. of N.Y. and N.J. v. Airport Auto Svcs., Inc.,* 396 *N.J.Super.* 427, 934 *A.*2d 665 (App. Div.2007), we held that failure to comply with the notice requirement "withdraws the consent to suit, and thus, deprives the court of subject matter jurisdiction." *Id.* at 430, 934 *A.*2d 665 (quoting *Port Auth. of N.Y. and N.J. v. Barry,* 15 *Misc.*3d 36, 833 *N.Y.S.*2d 839, 840 (N.Y.Sup.App.Term 2007)).

In *Brown, supra,* 283 *N.J.Super.* at 126–27, 661 *A.*2d 312, the plaintiffs, retired Port Authority police officers and members of the superior officers' bargaining unit, filed suit alleging violations of the collective bargaining agreement, actionable under federal and state law, and they sought compensatory and punitive damages. They filed suit without providing the required sixty days' notice. *Id.* at 127, 661 *A.*2d 312. We reversed the trial court's order that found federal law applied to the Port Authority and required arbitration of the plaintiffs' claims, rejected the plaintiffs' state law claims, "conclude[d] that [the] plaintiffs failed to comply with the provisions of *N.J.S.A.* 32:1–163 governing suits for money damages against the Port Authority" and dismissed the plaintiffs' complaint. *Id.* at 129, 661 *A.*2d 312.

We rejected the plaintiffs' claim that *N.J.S.A.* 32:1–163 only applied to tort claims because that was "inconsistent with the broad language of this provision and the expansive interpretation it has been given by the courts." *Id.* at 134, 661 *A.*2d 312. We also cited with approval *Trippe v. Port of N.Y. Auth.,* 14 *N.Y.*2d 119, 249 *N.Y.S.*2d 409, 198 *N.E.*2d 585 (1964), which construed New York's counterpart to *N.J.S.A.* 32:1–163. *Brown, supra,* 283 *N.J.Super.* at 133, 661 *A.*2d 312. There, the New York Court of

Appeals considered the plaintiffs' "claim that the flight of airplanes over homes located near Kennedy Airport had resulted in an unconstitutional taking of the homeowners' properties." *Id.* at 133–34, 661 *A.*2d 312. The *Trippe* court dismissed the complaint for failure to comply with the notice provision, stating:

The sweeping coverage of chapter 301 simply makes impossible any exclusion therefrom of any particular kind of suits except those specifically excluded in other parts of chapter 301.[4]

[*Trippe v. Port of N.Y. Auth., supra,* 249 *N.Y.S.*2d 409, 198 *N.E.*2d at 587.]

Absent those cases discussed below applying the doctrine of "substantial compliance," plaintiff has not cited a single reported or unreported case in which a complaint was allowed to proceed in derogation of the notice provision or time limitation contained in *N.J.S.A.* 32:1–163. In addition to *Brown,* our research has revealed only cases in which the claim *was dismissed* for lack of subject matter jurisdiction. *See Airport Auto Svcs., supra,* 396 *N.J.Super.* at 432, 934 *A.*2d 665 (dismissing the defendant's counterclaim for failure to comply); *Ingram, supra,* 232 *N.J.Super.* at 404–05, 557 *A.*2d 337 (dismissing the plaintiff's claim for UIM arbitration for failure to comply); *Matthews, supra,* 163 *N.J.Super.* at 87, 394 *A.*2d 172 (dismissing the plaintiff's negligence complaint for failure to comply).

It is true that our courts have applied the doctrine of "substantial compliance" to avoid the harsh results of failure to comply with *N.J.S.A.* 32:1–163. *See, e.g., Zamel v. Port of N.Y. Auth.,* 56 *N.J.* 1, 6–7, 264 *A.*2d 201 (1970) (finding substantial compliance based upon the plaintiff's immediate report of his accident and subsequent correspondence between the parties); *Airport Auto Svcs., supra,* 396 *N.J.Super.* at 431–32, 934 *A.*2d 665 (considering but rejecting application of the doctrine); *Atlantic Aviation Corp. v. Port of N.Y. Auth.,* 66 *N.J.Super.* 15, 21, 168 *A.*2d 262 (Law Div.1961) (finding substantial compliance because the Port Authority acknowledged the plaintiff's claim). Here, plaintiff does not, nor could she, argue that she substantially complied with *N.J.S.A.*

---

[4] Suits seeking benefits under workers' compensation law are, for example, excluded from the notice provision. *N.J.S.A.* 32:1–163.

32:1–163. It is undisputed that no contact regarding plaintiff's claim took place before she filed this suit.

■ Facing this body of precedent, plaintiff has taken a different tack. She contends that because the notice provisions of the Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 12–3, do not apply to suits brought under the LAD, CEPA or the CRA, we should conclude that the notice provisions of *N.J.S.A.* 32:1–163 have been impliedly repealed whenever a complaint implicating those statutes is filed against the Port Authority. We recognize that the TCA's notice requirements, *N.J.S.A.* 59:8–8, do not apply to these statutory claims. *See Fuchilla v. Layman,* 109 *N.J.* 319, 337–38, 537 *A.*2d 652 (finding notice requirements inapplicable to LAD claims), *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988); *Owens v. Feigin,* 194 *N.J.* 607, 613–14, 947 *A.*2d 653 (2008) (holding the notice requirements do not apply to claims under the CRA); *Racanelli v. Cnty. of Passaic,* 417 *N.J.Super.* 52, 59, 8 *A.*3d 782 (App.Div.2010) (holding the notice requirements do not apply to CEPA claims). Nonetheless, we reject the argument for a number of reasons.

■ First, our courts have long-recognized that the TCA does not apply to the Port Authority. *See Lieberman, supra,* 132 *N.J.* at 82, 622 *A.*2d 1295 (noting that even though the Port Authority statutorily consented to being sued, "it is not subject to the New Jersey Tort Claims Act") (citing *Williams v. Nat'l Car Rental Sys., Inc.,* 225 *N.J.Super.* 164, 168, 541 *A.*2d 1125 (Law Div.1988)). We are, therefore, hard-pressed to accept plaintiff's argument by analogy to a statute that is inapplicable from the start.

Second, those cases cited by plaintiff that recognized the "complementary and parallel" legislation doctrine as impliedly amending the compact did so only with respect to the substantive nature of the claims. The Court in *Bunk, Ampro Fisheries, E. Paralyzed Veterans Ass'n,* and *Int'l Union of Operating Eng'rs, Local 68 v. Del. River & Bay Auth.,* 147 *N.J.* 433, 445, 688 *A.*2d 569 (1997), utilized the "complementary and parallel" legislation doctrine to construe an implied modification of a bi-state compact so as to

permit statutory or regulatory claims to be asserted. But, none of those cases considered implied repeal or modification of conditions precedent to establishing subject matter jurisdiction for the suits, i.e., in this case, the notice requirement of *N.J.S.A.* 32:1–163. Plaintiff has not cited any case for that proposition, nor did our research reveal one.

Third, modification of a statute by implication is disfavored, even when the intent of our Legislature alone is at issue. "[T]here is a strong presumption in the law against implied repealers and every reasonable construction should be applied to avoid such a finding." *In re Comm'r of Ins.'s Issuance of Orders A–92–189 & A–92–212,* 137 *N.J.* 93, 99, 644 *A.*2d 576 (1994) (citing *Mahwah Twp. v. Bergen Cnty. Bd. of Taxation,* 98 *N.J.* 268, 281, 486 *A.*2d 818, *cert. denied,* 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.*2d 696 (1985)). "[A] repeal by implication requires clear and compelling evidence of legislative intent, and such intent must be free from reasonable doubt." *Ibid.* (citing *Mahwah Twp., supra,* 98 *N.J.* at 280, 486 *A.*2d 818). We, therefore, reject plaintiff's implied modification or repeal argument as applied to the Port Authority, a bi-state agency created by a compact entered into by both New Jersey and New York, and its limited consent to be sued.

Lastly, we recognize our role as a court of intermediate appellate jurisdiction. It would be unwise for us to conclude that the notice provisions of *N.J.S.A.* 32:1–163 do not apply to plaintiff's statutory causes of action given the significant implications of such a holding. *See Tannen v. Tannen,* 416 *N.J.Super.* 248, 272–73, 3 *A.*3d 1229 (App.Div.2010) (collecting cases and refusing to adopt provisions of the *Restatement (Third) of Trusts* to *N.J.S.A.* 2A:34–23(b)(11) absent guidance from the Supreme Court), *aff'd o.b.,* 208 *N.J.* 409, 31 *A.*3d 621 (2011).

In sum, we affirm the dismissal of plaintiff's complaint because she failed to comply with the sixty-day notice provisions of *N.J.S.A.* 32:1–163.

Affirmed.