NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5064-17T3

MICHAEL BANDLER,

      Plaintiff-Appellant,

v.

LANDRY'S INC., GOLDEN
NUGGET ATLANTIC CITY,
LLC, TILLMAN FERTITTA,
and TOM POHLMAN,

      Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

July 22, 2020

APPELLATE DIVISION

Argued February 24, 2020 – Decided July 22, 2020

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey,
Law Division, Atlantic County, Docket No. L-0026-
16.

Michael Bandler, appellant pro se.

Louis Michael Barbone argued the cause for
respondents (Jacobs & Barbone, PA, attorneys; Louis
Michael Barbone, on the brief).

Chanel J. Van Dyke, Deputy Attorney General, argued
the cause for amicus curiae Office of the Attorney
General (Gurbir S. Grewal, Attorney General,
attorney; Melissa H. Raksa, Assistant Attorney

General, of counsel; Chanel J. Van Dyke, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

The sole issue presented in this appeal is whether the Casino Control Act (CCA), N.J.S.A. 5:12-1 to -233, which grants the Division of Gaming Enforcement (Division) authority to regulate gaming-related advertising, N.J.S.A. 5:12-70(a)(16), preempts plaintiff's consumer fraud and common law action alleging a casino hotel falsely advertised a poker tournament. We conclude the action is not preempted. We therefore reverse the summary judgment dismissal of plaintiff's complaint on that ground, and remand for further proceedings.

I.

We discern the following facts from the record, viewed in a light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Defendant Golden Nugget Atlantic City, LLC (GNAC) operates the Golden Nugget casino and hotel in Atlantic City. GNAC advertised a "Grand Poker Series" tournament to be held at its casino in January 2015.

Plaintiff, an experienced competitive poker player, saw one of the advertisements. Although he did not retain a copy of the advertisement he

viewed, he alleged it announced "$150,000 IN PRIZE MONEY." It listed twelve "one day tournaments" to be held over ten days. The advertisement posted various admission fees for each event.

The advertisement did not expressly state whether the prize money was guaranteed or not guaranteed. An exemplar that GNAC produced in discovery also stated in small print at the bottom, "Management reserves all rights to change or cancel at any time." It also stated that the official rules were available in "The Poker Room." However, plaintiff did not recall seeing that disclaimer.

In response to the advertisement, plaintiff traveled from his Vermont home to New Jersey to enter the tournament. He competed successfully in one event. Then, GNAC cancelled the tournament due to the low number of registered players. GNAC stated that, pursuant to the tournament rules, it paid plaintiff a portion of the limited prize money generated by the entry fees that the casino collected.

Plaintiff thereafter filed his complaint alleging a violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -224, as well as fraud, misrepresentation, and civil conspiracy. He alleged the advertisement was deceptive, and falsely induced him to attend the tournament based on the promise that GNAC would pay out $150,000 in prize money. He alleged he

A-5064-17T3

incurred expenses for travel, lodging, and meals to attend the event and suffered consequential damages.

In their answer, defendants denied that the advertisement was deceptive, noting that it disclosed the tournament could be cancelled at any time. Among other affirmative defenses, defendants alleged the court lacked jurisdiction to hear the suit and the complaint was frivolous. Defendants purported to reserve the right to seek fees under the N.J.S.A. 2A:15-59.1.

After a period of discovery, plaintiff moved for partial summary judgment on the CFA claim, asserting the undisputed material facts demonstrated the advertisement misled him to believe $150,000 in prizes would be paid. Defendants cross-moved, arguing that absent an explicit statement that prize money was guaranteed, the advertisement did not mislead plaintiff to believe that it was, particularly since the disclaimer stated the tournament could be changed or cancelled at any time.

The trial court framed the issue as whether the Division had exclusive jurisdiction over plaintiff's claims. After soliciting additional briefs on the issue, the court found it lacked jurisdiction. The court found that the CCA expressly granted the Division exclusive jurisdiction over all gaming-related

4

advertising.[1]  The court distinguished between non-gaming-related advertising, like that focused on enticing people to visit casinos, and advertising that related to the games themselves.  The court concluded that the Division exercised exclusive jurisdiction over the latter category, which the court found included the advertisement about which plaintiff complained.  Adhering to that reasoning, the court denied plaintiff's motion for reconsideration.

Plaintiff appeals from the summary judgment dismissal of his complaint on jurisdictional grounds.  As the case involves the interplay of two statutes implemented within the Department of Law and Public Safety, we invited the Attorney General to seek participation as amicus curiae.  The Attorney General urges us to reverse the trial court's order.[2]

---

[1]  The CCA was amended in 2011 to modify the responsibilities of the Division and the Casino Control Commission (Commission).  L. 2011, c. 19. The Division acquired responsibility for overseeing casinos' daily operations, including reviewing gaming-related advertising – a power previously vested in the Commission.  Id. at § 26.  Many of the cases dealing with the CCA were decided before the amendment and refer to the Commission's jurisdiction, as opposed to the Division's.  Also, the parties and the judge sometimes referred to the Division and Commission interchangeably.  For consistency and clarity, we refer throughout to the Division as the entity with jurisdiction over gaming-related advertising.

[2]  In November 2019, plaintiff informed us that he filed a bankruptcy petition and questioned whether the pending appeal was stayed under 11 U.S.C. 362. In a sua sponte order, we exercised our concurrent authority to determine the applicability of the automatic stay, see In re Bona, 124 B.R. 11, 15 (S.D.N.Y. 1991), and analyzed the parties' respective claims and defenses, see Maritime

A-5064-17T3

II.

We review a summary judgment order de novo, applying the same standard as the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Summary judgment shall be entered if the motion record shows "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill, 142 N.J. at 540. In this appeal, the issue is a purely legal one, pertaining to the court's subject matter jurisdiction. Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012). We review that issue de novo. Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Both the CFA and CCA bar false, misleading, and deceptive advertising, including advertising that is misleading by omission. The CFA declares unlawful "any unconscionable commercial practice, deception, fraud, false

Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) (stating that "[a]ll proceedings in a single case are not lumped together for purposes of automatic stay analysis"). Noting that section 362(a) forbids continuation of an "action or proceeding against the debtor," 11 U.S.C. 362(a)(1) (emphasis added), we determined that plaintiff's affirmative claims were not stayed, because they were asserted by the debtor. But, defendants' potential frivolous litigation claim was stayed because it would be against the debtor. See Action Drug Co. v. Overnite Transp. Co., 724 F. Supp. 269, 278 (D. Del. 1989) (where a plaintiff-debtor enters a bankruptcy, defendant may not assert a counterclaim against the plaintiff), aff'd, 902 F.2d 1558 (3d Cir. 1990).

pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent others rely upon such concealment, suppression or omission, in the connection with the sale or advertisement of any merchandise." N.J.S.A. 56:8-2 (emphasis added).[3] The CFA authorizes the Attorney General to promulgate regulations to enforce this provision, N.J.S.A. 56:8-4, and authorizes private enforcement actions in court, and recovery of treble damages and attorneys' fees, N.J.S.A. 56:8-19.

The CCA directs the Division to promulgate regulations "[g]overning the gaming-related advertising of casino licensees, their employees and agents, with the view toward assuring that such advertisements are in no way deceptive[.]" N.J.S.A. 5:12-70(a)(16).[4] The regulations require that "[a]dvertising shall be based upon fact, and shall not be false, deceptive or misleading" and "no advertising shall . . . [u]se any type, size, location, lighting, illustration, graphic depiction or color resulting in the obscuring of any material fact; or . . . [f]ail to specifically designate any material conditions or limiting factors." N.J.A.C. 13:69C-14.2(d). The CCA does not expressly authorize a general private right of action to enforce its provisions and

_____

[3] "Merchandise" is broadly defined to include services, N.J.S.A. 56:8-1(c), and no doubt covers gaming entertainment.

[4] The statute also provides that such regulations prescribe messages to combat compulsive gambling. Ibid.

A-5064-17T3

regulations, <u>Miller v. Zoby</u>, 250 N.J. Super. 568, 573 (App. Div. 1991), and our Court has declined to infer one, <u>Campione v. Adamar of N.J., Inc.</u>, 155 N.J. 245, 266 (1998) (declining, in light of the "elaborate regulatory scheme," "to imply a cause of action when no such cause of action exists at common law").

As the Supreme Court noted in <u>Lemelledo v. Beneficial Management Corp.</u>, 150 N.J. 255, 271 (1997), "regulation is frequently complementary, overlapping, and comprehensive." To preserve the goals of overlapping statutes, the Court set a high bar for preemption. "Absent a nearly irreconcilable conflict, to allow one remedial statute to preempt another or to co-opt a broad field of regulatory concern, simply because the two statutes regulate the same activity, would defeat the purposes giving rise to the need for regulation." <u>Ibid.</u>

To determine if there is such a conflict, we look first to the express language of the statutes. Both the CFA and CCA address their intersection with other statutes. "The 'rights, remedies and prohibitions' created by the CFA are cumulative to any other rights, remedies, and prohibitions created by the common law or other statutes." <u>Id.</u> at 264 (quoting N.J.S.A. 56:8-2.13). On the other hand, the CCA provides that if any provision "is inconsistent with, in conflict with, or contrary to any provision of law, such provision of

[the CCA] shall prevail . . . ." N.J.S.A. 5:12-133(b). Furthermore, the Division "shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of [the CCA]." Ibid.

We are satisfied that N.J.S.A. 5:12-133(b) does not resolve the issue before us. We construe this section of the CCA narrowly to avoid casting aside other remedial legislation. See State v. Resorts Int'l Hotel, Inc., 173 N.J. Super. 290, 296-97 (App. Div. 1980). With that principle in mind, we discern no inconsistency or conflict between the CFA's and CCA's prohibition of false, deceptive or misleading advertising, based on the provisions we have quoted above. Second, the "exclusive jurisdiction" that is granted to the Division pertains only to "matters delegated to it or within the scope of its powers." The CCA delegates to the Division the authority to issue and enforce regulations governing "gaming-related advertising," but it does not delegate to it the power to adjudicate common law or non-CCA statutory claims, or to award damages. Campione, 155 N.J. at 262. Acknowledging the Division's authority "to establish the rules of licensed games" and "to investigate, adjudicate, and punish regulatory violations," the Court in Campione noted that "[n]owhere . . . does the [CCA] delegate to the [Division] the adjudication of a patron's common-law [discrimination] claims," and concluded that

Legislature had not granted exclusive jurisdiction over those claims or the plaintiff's contract claims. Id. at 260-61.

Absent an explicit grant of exclusive jurisdiction to the Division over plaintiff's claims, we must look to the general statutory scheme to determine whether the Legislature intended to grant exclusive jurisdiction. See e.g., N.J. Div., Horsemen's Benevolent Protective Ass'n v. N.J. Racing Comm., 251 N.J. Super. 589, 601 (App. Div. 1991) (analyzing "whether anything in the statutory scheme . . . evinces a legislative intent to confer upon the Racing Commission exclusive jurisdiction to adjudicate all legal and factual disputes involving control and disposition of the Fund).

"The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." Lemelledo, 150 N.J. at 264. In Lemelledo, our Supreme Court rejected a lender's argument that a CFA claim over "loan packing practices" was preempted by other statutes governing lending activities. Id. at 266. The Court applied a "presumption that the CFA applies to covered practices, even in the face of other existing sources of regulation, [which] preserves the Legislature's determination to effect a broad delegation of enforcement authority to combat consumer fraud. Id. at 270.

The Court established a rigorous test for determining whether another statute preempted the CFA:

> In order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied . . . that <u>a direct and unavoidable conflict</u> exists between application of the CFA and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal <u>specifically, concretely, and pervasively with the particular activity,</u> implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. We stress that <u>the conflict must be patent and sharp</u>, and must not simply constitute a mere possibility of incompatibility.
>
> [<u>Ibid.</u> (emphasis added).]

See also <u>Shaw v. Shand</u>, 460 N.J. Super. 592, 610-11 (App. Div. 2019) (applying the <u>Lemelledo</u> test). That test governs our analysis here.

We previously addressed the alleged conflict between the CFA and the CCA regarding deceptive advertising in <u>Smerling v. Harrah's Entertainment, Inc.</u>, 389 N.J. Super. 181, 184-85 (App. Div. 2006). Invoking both the CFA and CCA, the plaintiffs alleged that promotional advertisements that falsely promised cash incentives induced them to visit a casino hotel. <u>Id.</u> at 184. The trial court held that the Division had exclusive jurisdiction over the plaintiffs' claims and dismissed the CFA claims under <u>Rule</u> 4:6-2(e). <u>Id.</u> at 185-86. We

11

reversed, concluding the CCA did not preempt plaintiffs' CFA claims from proceeding. Id. at 193.[5]

Referring to Campione, we noted that "[e]ven in the context of New Jersey's highly regulated casino industry, the Court has held that the Legislature 'did not intend to prevent patrons from seeking vindication of common-law claims in the courts.'" Id. at 189 (quoting Campione, 155 N.J. at 260). Applying the Lemelledo test, we found the Legislature intended to grant the Division "exclusive control of the regulation of the rules of casino games and of the content of gaming-related advertising." Id. at 190 (emphasis in original). By "gaming-related advertising," we understand the court to have

---

[5] We noted that the trial court also erred in using the terms "exclusive jurisdiction" and "primary jurisdiction" interchangeably. Id. at 187. We explained that an agency may have "primary jurisdiction" without depriving the court of jurisdiction to decide a matter; on the other hand, when an agency has "exclusive jurisdiction," the court is deprived of decision-making authority. Id. at 187. That is because exclusive jurisdiction is created when "the Legislature has vested exclusive jurisdiction with an agency, which preempts a court's original jurisdiction over the subject matter." Ibid. "Under the doctrine of primary jurisdiction, on the other hand, 'the case is properly before the court, but agency expertise is required to resolve the questions presented.'" Ibid. (quoting Muise v. GPU, Inc., 332 N.J. Super. 140, 159 (App. Div. 2000)). The primary jurisdiction doctrine is designed to utilize the agency's expertise and to promote uniform interpretation of an agency's regulations. Id. at 188. In this case, as the court did not address whether the Division has primary jurisdiction, we limit ourselves to the issue of exclusive jurisdiction.

12

referred to advertising related to the technical aspects of gaming in which the Division's expertise was essential, and uniformity was intended.

Smerling noted two cases holding the Division had exclusive jurisdiction over a claim regarding signage placed directly on a slot machine. Id. at 190-91 (citing Marcangelo v. Boardwalk Regency Corp., 847 F. Supp. 1222, 1224-25 (D.N.J. 1994), aff'd on other grounds, 47 F.3d 88 (3d Cir. 1995), and Decker v. Bally's Grand Hotel Casino, 280 N.J. Super. 217, 222 (App. Div. 1994)). We observed that the federal court relied in part on the CCA's grant of exclusive authority to the Division "to pre-approve all aspects of a slot machine, including program, odds and signage, even before the slot machine is installed on the casino floor . . . ." Smerling, 389 N.J. Super. at 190.

"Preemptive intent" was also found in Doug Grant, Inc. v. Greate Bay Casino Corp., 3 F. Supp. 2d 518, 536-37 (D.N.J. 1998), in which the plaintiff complained about blackjack rules and related advertising to combat card-counting. Smerling, 389 N.J. Super. at 191. We noted the federal court relied on the Division's extensive regulation of the blackjack game in holding that allowing a CFA claim to proceed would disrupt the CCA's regulatory scheme. Ibid.

We observed that those cases "dealt with highly technical areas of the rules of either casino games, casino gaming equipment, or gaming-related

13

advertising, which are the subject of comprehensive regulation by the [Division] . . . and consequently fall within the special expertise of the agency." Id. at 192. The cases did not support preempting the court from addressing the kind of advertising that Smerling and her co-plaintiffs targeted in their complaint. Ibid. We add another ground for distinguishing both Marcangelo and Decker: those cases pre-dated Lemelledo, and did not apply the Court's rigorous test for preemption.

We held in Smerling there was no inevitable or direct and unavoidable conflict between the CFA and CCA regarding the advertising involved. Id. at 192-93. Nor would "judicial construction . . . affect the uniformity of the interpretation or application of the [CCA]'s statutory or regulatory requirements." Id. at 193.

We noted that "[t]here is nothing highly sophisticated or technical about [the] defendants' two promotional schemes." Id. at 192. There was "no reference in either advertisement to the heavily regulated rules of the game or gaming equipment." Ibid. Rather, "the challenged advertising simply involves vouchers that resemble coupons used to promote casino visitation and patronage, similar in type to those ads used to entice patronage of any other business." Ibid. Therefore, the advertisements lacked content that "calls upon agency expertise or prerogative to which a court need defer." Ibid. Rather,

14                                                                        A-5064-17T3

assessment of the advertisements fell well within the court's experience and expertise. Id. at 193.

We concluded that the CFA and the CCA concurrently regulated the advertisements in Smerling. Ibid. "[B]oth the consumer fraud and casino control schemes regulate with a mutual view toward 'assuring that such advertisements are in no way deceptive.'" Ibid.

We reach the same conclusion here. Like the advertisement in Smerling, the advertisement involved here invited the public to visit a casino by offering a prize or reward that plaintiff contends was falsely promised. The issue is whether the statement "$150,000 IN PRIZE MONEY" was deceptive, where the casino omitted stating it intended to pay $150,000 only so long as enough people signed up, and the only indirect reference to that intent was the disputed disclaimer in small print about official rules and the right to change or cancel the event.

The advertisement itself does not pertain to arcane or technical rules of the game. No special expertise vested in the Division is required to resolve the question. There is no "direct and unavoidable conflict" between the CFA and CCA provisions, let alone a "patent and sharp" conflict, as Lemelledo requires. 150 N.J. at 270. There is no significant risk that the CFA and CCA "as

applied, will work at cross-purposes." Ibid. We discern no legislative intent to preempt plaintiff's CFA or common law claims in Superior Court.

Our conclusion is supported by the Attorney General, who, through the Division of Consumer Affairs and the Division of Gaming Enforcement, implements both the CFA and CCA. We attach great weight to an agency's interpretation of a statute it is charged with implementing, particularly those that require technical expertise. N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978) (stating "the opinion as to the construction of a regulatory statute of the expert administrative agency charged with the enforcement of that statute is entitled to great weight"); see also Waksal v. Dir., Div. of Taxation, 215 N.J. 224, 231 (2013). That interpretation may come to us in the form of an amicus brief. U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (considering agency interpretation of statute in invited appellate amicus brief, where agency was not a party to the trial court action).

The Attorney General contends that Lemelledo provides the guiding principle for resolution of this case. He argues that absent a direct and unavoidable conflict between the CFA and CCA, preemption is unwarranted; and, as it pertains to the advertising involved in plaintiff's action, there is no such conflict. We agree.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17