# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1744-24

T.G.,[1]

    Plaintiff-Respondent,

v.

E.M.G.,

    Defendant-Appellant.

_____

Submitted June 16, 2025 – Decided June 24, 2025

Before Judges Mawla and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-1792-23.

Fox Rothschild LLP, attorneys for appellant (Adam Wiseberg, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use the parties' initials pursuant to Rule 1:38-3(d)(9) and (10).

We granted defendant E.M.G. leave to appeal from a January 10, 2025 order, which denied her motion for the Family Part to relinquish jurisdiction of her custody dispute with plaintiff T.G. to the New York courts, pursuant to the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95. Having considered the record in this unopposed appeal, we reverse and remand for the reasons expressed in this opinion.

The parties were married in New York in October 2020. Their son was born in New Jersey in September 2022. On March 16, 2023, defendant obtained a temporary restraining order (TRO) against plaintiff, pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. The motion judge here was also the judge who heard the domestic violence matter. He granted defendant temporary custody of the child and awarded plaintiff one overnight of parenting time per week. Defendant and the child, who was then six months old, moved to the parties' second home, located in upstate New York near the Canadian border.

In June 2023, plaintiff filed a complaint for divorce. Defendant filed an answer and counterclaim in September 2023.

A-1744-24

On October 9, 2023, the judge granted defendant a final restraining order (FRO) following a trial. The custody and parenting time ordered under the TRO remained the same.

In March 2024, plaintiff filed an order to show cause in the Family Part seeking: joint physical custody of the parties' child; defendant vacate the New York home; and sole occupancy of the New York home. He claimed the New York home was his premarital property, and removing defendant from the home would not be an issue because her parents lived nearby, and she could live with them. Plaintiff certified he "would like to remain at the [New York] property for custody visits until the divorce is finalized." He urged the judge to award him fifty-fifty custody because he could "work remotely and can easily relocate to . . . New York." The order to show cause was converted into a motion, which the judge heard in the normal course.

Defendant filed a cross-motion and although she conceded the New Jersey home was pre-marital, she opposed her removal from the New York home because she alleged the "property was purchased with the intent to be used as a family residence." She opposed joint physical custody and instead requested the court award plaintiff parenting time in New York every other weekend from Saturday until Monday.

3

The judge adjudicated the motions on May 24, 2024. He denied plaintiff's request for joint physical custody, noting defendant had been awarded temporary custody under the FRO, and plaintiff had not provided proof of completion of a court-ordered batterers' intervention program as required by the FRO. Therefore, plaintiff had not shown a change of circumstances to modify custody, and defendant did not have to vacate the New York home. The judge also denied defendant's request to award plaintiff more parenting time because he lacked sufficient information to decide the issue. He encouraged the parties to discuss parenting time through their attorneys. In August 2024, the parties entered a consent order memorializing that defendant would vacate the New York home, and all parenting time would occur in New York.

In December 2024, defendant moved to have New Jersey relinquish custody jurisdiction to New York pursuant to the UCCJEA. Although New Jersey "technically" had jurisdiction, defendant argued it was an inconvenient forum. She and the child had resided in New York since March 2023, and plaintiff had lived in New York since September 2024 and was exercising parenting time there. Defendant claimed New York should assume jurisdiction because she had filed a complaint for divorce there, and discovery in the New

A-1744-24

Jersey matter had not been completed, an early settlement panel had not occurred, and there was no trial date yet.

Plaintiff opposed defendant's motion and asserted defendant had unilaterally moved to New York. He claimed that following the FRO hearing, the judge had indicated there should be joint physical custody and defendant was not implementing it. Plaintiff contended New Jersey was the child's home state because he had lived in the state for the first six months of his life. New Jersey was not an inconvenient forum because both parties had New Jersey attorneys and had participated in the litigation in New Jersey. Moreover, the Family Part judge was familiar with the case, the child's medical and educational records were in New Jersey, and a transfer to New York would result in delays and increased litigation costs. Plaintiff claimed defendant was forum shopping.

Defendant disputed plaintiff's claims, noting that she fled to New York because of the domestic violence and lost her job as a result. She disputed his assertion the judge had said there should be joint physical custody. Defendant certified she filed the New York divorce complaint because the matter should be heard there for reasons of judicial economy.

Defendant argued New Jersey was an inconvenient forum because: the parties had listed the New Jersey property for rent; the family had been living in

New York; plaintiff wished to occupy the New York residence; the child's doctors and preschool were in New York; there was no parenting time occurring in New Jersey; all witnesses and evidence were located in New York; and traveling to New Jersey to attend court would require defendant to pay for child care, flights, hotels, and time off of work. Conversely, defendant did not have to make elaborate travel and work plans if the matter remained in New York, and her parents could watch the child while she attended court. Defendant noted plaintiff made allegations of child abuse, which she disputed. Nonetheless, New York Child Protective Services was in a better position to address the allegations than New Jersey authorities, given the child had only resided in New Jersey for six months.

The motion judge denied the request to transfer the matter to New York because New Jersey had jurisdiction to make the initial custody determination as it was the child's home state pursuant to N.J.S.A. 2A:34-65(a)(1). He reasoned that although defendant was awarded temporary custody when she obtained the TRO, since it was pursuant to an ex parte domestic violence complaint, "[t]here was no custody determination [because] as is typical . . . on TRO proceedings . . . temporary custody of the parties' child was awarded to the protected party." Although defendant left New Jersey with the child after

6

receiving the TRO, the judge noted it was without plaintiff's consent. Notwithstanding her move, defendant had "filed an extensive answer and counterclaim for divorce, seeking a litany of relief, including for [the New Jersey c]ourt to adjudicate legal and physical custody." Defendant also "sought extensive relief from [the New Jersey c]ourt on multiple applications and meaningfully participated in [the New Jersey divorce] proceeding in a fulsome and earnest manner." The judge noted defendant had never raised the jurisdictional issue in any of her prior submissions to the court.

The judge reiterated custody had never been decided conclusively. This included when he denied plaintiff's request for joint physical custody on May 24, 2024. Therefore, he rejected the argument that plaintiff's return to New York constituted a change in circumstances requiring New Jersey to relinquish jurisdiction.

The judge concluded defendant's arguments failed to consider "an analysis of the timing . . . in the filing of the proceedings and the consent to the jurisdiction of New Jersey based on the counterclaim and participation in several motion proceedings." He expressed "grave concerns" about the fact that defendant's removal of the child could "be used to divest New Jersey of

A-1744-24

jurisdiction, especially where there has not been any merits custody determination."

The judge found the UCCJEA gave New Jersey exclusive, continuing jurisdiction to address custody. New Jersey was not an inconvenient forum because he had conducted "the FRO trial and adjudicated a litany of prior applications" in the divorce case. The parties had already spent "considerable sums of money," and "[t]o start over with a new [j]udge in a new forum" would be "inconvenient" and "very expensive."

Beyond the jurisdictional issue, the judge commented that he saw "no impediment . . . to moving to a joint physical custody . . . [and] parenting time schedule." He stressed "[t]he [c]ourt . . . is not adjudicating anything related to parenting time and [had commented] to assist the parties in their anticipated parenting time discussion through counsel."

I.

On appeal, defendant argues the motion judge's ruling was a mistake of law because he fashioned his own legal standard regarding custody jurisdiction without regard to the UCCJEA. She notes there was an initial custody ruling when the judge granted her temporary custody in the TRO, the FRO, and adjudicated the pendente lite motions for parenting time.

However, defendant alleges New Jersey no longer has exclusive, continuing jurisdiction because the family neither resides in, nor has a significant connection to New Jersey. Not only did plaintiff concede the child's limited connection with New Jersey, the child's caregivers, doctors, and family are now all in New York. As a result, New Jersey should have relinquished jurisdiction to New York because New Jersey was an inconvenient forum.

Defendant contends the judge erred when he based the jurisdictional finding on the fact she had filed an answer and counterclaim and participated in the New Jersey divorce litigation. Not only was this not a basis for jurisdiction under the UCCJEA, the parties cannot confer jurisdiction on the court.

Defendant argues the judge pre-determined custody. She alleges he would likely pre-judge the remaining issues in the divorce and requests we remand them to be heard before a different judge.

## II.

"We defer to a trial judge's factfinding 'when supported by adequate, substantial, credible evidence.'" M.G. v. S.M., 457 N.J. Super. 286, 293 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, "[t]he determination of whether subject matter jurisdiction exists is a legal question, which we review de novo." AmeriCare Emergency Med. Serv., Inc.

v. City of Orange Twp., 463 N.J. Super. 562, 570 (App. Div. 2020) (citing

Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012)).

A.

<u>Jurisdiction to Make an Initial Custody Determination</u>

The UCCJEA states:

> a court of this State has jurisdiction to make an initial child custody determination only if:
>
> > (1) . . . this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State . . . .
>
> [N.J.S.A. 2A:34-65(a)(1).]

The UCCJEA defines a "child custody determination" as "a judgment, decree, or other order of a court providing for the legal custody, physical custody[,] or visitation with respect to a child. The term includes a permanent, <u>temporary</u>, initial[,] and modification order." N.J.S.A. 2A:34-54 (emphasis added). A "[c]hild custody proceeding" is one "in which legal custody, physical custody[,] or visitation with respect to a child is an issue. The term includes a

10

proceeding for divorce, separation, . . . and protection from domestic violence, in which the issue may appear." Ibid.

We part ways with the trial judge's view that there had not been an initial custody determination. New Jersey had home state jurisdiction at the time the judge granted defendant temporary custody in both the TRO and FRO. As a result, New Jersey had exclusive, continuing jurisdiction.

B.

The UCCJEA's Scope of Exclusive, Continuing Jurisdiction

The next question for us to resolve is whether jurisdiction should have continued in New Jersey or been relinquished to New York. N.J.S.A. 2A:34-66(a) states:

> a court of this State that has made a child custody determination consistent with [N.J.S.A. 2A:34-65] . . . has exclusive, continuing jurisdiction over the determination until:
>
> > (1) a court of this State determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or
> >
> > (2) a court of this State or a court of another state determines that neither the child, nor

11

a parent, nor any person acting as a parent presently resides in this State.

[Emphasis added.]

Based on the plain language of the statute, it is clear New Jersey no longer had exclusive, continuing jurisdiction under the UCCJEA. There is no dispute that neither the child, nor the parties, continued to reside in New Jersey. This alone would divest New Jersey of jurisdiction under N.J.S.A. 2A:34-66(a)(2).

The record also supports a lack of jurisdiction under N.J.S.A. 2A:34-66(a)(1), as the child's residence in New Jersey for the first six months of life was outweighed by having since lived in New York for over two years. There is no evidence in the record of a significant connection between the family and New Jersey. As a matter of chronology, it is undisputed the child's schooling, medical care, and immediate and extended family relationships transitioned away from New Jersey and are now in New York.

C.

Forum Non Conveniens

The UCCJEA provides as follows:

> a. A court of this State that has jurisdiction under this act to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate

12

forum. The issue of inconvenient forum may be raised upon the court's own motion, request of another court or motion of a party.

b. Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside [of] this State;

(3) the distance between the court in this State and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

13

> (8) the familiarity of the court of each state with the facts and issues of the pending litigation.
>
> [N.J.S.A. 2A:34-71].

The facts in the record demonstrate the judge should have declined jurisdiction because New Jersey was an inconvenient forum. Virtually all the statutory factors favored New Jersey retaining jurisdiction. We address these factors in turn.

N.J.S.A. 2A:34-71(b)(1): Defendant had already received an FRO in New Jersey granting her permanent protection regardless of where she resides. Indeed, the Violence Against Women Act provides: "Any protection order issued . . . by the court of one State, . . . shall be accorded full faith and credit by the court of another State . . . and enforced by the court and law enforcement personnel of the other State . . . as if it were the order of the enforcing State . . . ." 18 U.S.C. § 2265(a).

N.J.S.A. 2A:34-71(b)(2): The child has resided outside of New Jersey for more than two years.

N.J.S.A. 2A:34-71(b)(3): The distance between the New Jersey court and the New York court that would assume jurisdiction was vast considering the parties and the child reside in upstate New York, near the border with Canada.

14

N.J.S.A. 2A:34-71(b)(4): The parties' financial circumstances did not support a long-distance custody litigation. Defendant certified to the financial costs of litigating the custody dispute in New Jersey from upstate New York in greater detail than plaintiff's general claims to the contrary.

N.J.S.A. 2A:34-71(b)(5): The parties had no agreement as to which court should assume jurisdiction. However, the judge's view that defendant's participation in the divorce was dispositive of subject matter jurisdiction is not a consideration under the UCCJEA. Also, jurisdiction under the UCCJEA was not controlled by a prescribed time bar, as the judge implied when he questioned the timeliness of defendant raising the jurisdiction claim.

N.J.S.A. 2A:34-71(b)(6): As we recounted, the relevant medical and educational evidence related to the child is in New York. Most, if not all, of the evidence the court would need to assess the N.J.S.A. 9:2-4(c) custody factors is in New York.

N.J.S.A. 2A:34-71(b)(7): The record contains no evidence the New York court would be unable to decide the custody issue expeditiously. We harbor no doubt about the procedures necessary to present evidence before a court in New York. Like our own law, in New York "[t]he court's paramount concern when making any custody determination is the best interests of the children, as

15

determined upon a consideration of the totality of the circumstances." Matter of Wright v. Burke, 226 A.D.3d 694, 695 (N.Y. 2024) (citing Matter of Vidal v. Taneja, 218 A.D.3d 594, 595 (N.Y. 2023)).

N.J.S.A. 2A:34-71(b)(8): This factor favored New Jersey retaining jurisdiction because the record contains no specific information about the New York court's familiarity with the parties' case, and the record shows the Family Part judge was intimately familiar with the case and made thoughtful decisions. However, this factor did not outweigh the other seven factors showing New Jersey was an inconvenient forum for the custody dispute.

D.

For the reasons expressed in parts II (A), (B), and (C) above, we reverse the January 10, 2025 order. N.J.S.A. 2A:34-71(a) would require us to stay the New Jersey child custody proceedings "upon condition that a child custody proceeding be promptly commenced in" New York. However, that is not necessary here because defendant commenced such an action in New York. It suffices that the January 10, 2025 order is reversed, and the Family Part shall not have custody jurisdiction. Although we have concluded New Jersey lacks custody jurisdiction, the court may retain jurisdiction over other aspects of the

16

divorce as permitted by N.J.S.A. 2A:34-71(d).  However, that question is not before us.

## III.

Finally, we reject defendant's assertion that the remaining issues in the divorce should be heard by a different judge.  We appreciate defendant's concern about the judge's remarks regarding joint physical custody.  Not only is joint physical custody rare, Pascale v. Pascale, 140 N.J. 583, 597 (1995), if the judge had awarded joint physical custody without considering the N.J.S.A. 9:2-4(c) factors, it would have constituted error as a matter of law.  Our law does not presume joint physical custody.

However, as we recounted, the judge's remarks were manifestly intended to encourage what were apparently ongoing discussions about custody between the parties through counsel.  A judge may be disqualified where they have "given an opinion upon a matter in question in the action."  R. 1:12-1(d).  That is not what happened here.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1744-24